183 N.J. Super. 159 (1982)
443 A.2d 731
MARTHA BRUMFIELD, PETITIONER-RESPONDENT,
v.
GALLO WINE SALES OF NEW JERSEY, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 18, 1982.
Decided February 17, 1982.
*161 Before Judges BISCHOFF, KING and POLOW.
Braff, Litvak, Ertag, Wortmann & Harris, attorneys for appellant (Brian C. Harris, of counsel and Randy K. Kotel, on the brief).
Eugene P. Chell, attorney for respondent.
The opinion of the court was delivered by KING, J.A.D.
This case presents a complex factual pattern which involves the extent of a workers' compensation insurance carrier's lien against the proceeds of a third-party tort settlement. The facts were stipulated before the judge of compensation.
On September 6, 1974 Paul Brumfield, a salesman for Gallo Wines, was injured in an automobile accident during the course of his employment. As a result of these injuries he died on September 24, 1974. He left two dependents, his 29-year-old wife Martha and his one-year-old daughter Debora. At death, Paul was earning $210 a week, entitling his dependents to the maximum benefit of $112 a week for two dependents and $105 a week for one dependent.
Shortly after the death Gallo Wines, through its workers' compensation carrier, Argonaut Insurance Company, commenced payment of $112 a week dependency benefits to Paul's survivors. These payments continued until September 14, 1976 when the dispute over the amount of credit to be given for the third-party recovery arose.
During 1975 Martha started a third-party tort action against the party allegedly responsible for Paul's death. This litigation in the Cumberland County Law Division resulted in a settlement of $75,000 during the summer of 1976. On September 24, 1976, on notice to Argonaut, Martha's counsel in the third-party death action moved "for an order setting and establishing distribution to the heirs of Paul G. Brumfield, decedent, of such sums available as a result of settlement of this litigation between the *162 plaintiff and the defendant" pursuant to N.J.S.A. 2A:31-4 of the Wrongful Death Act. As a result of this application Judge Miller made the following allocation of the net proceeds of the $75,000 settlement of the wrongful death claim:

 Martha $46,592.97
 Debora 8,139.36
 Counsel fee 19,142.67
 Counsel's costs 1,125.00

Thus, 85% of the net settlement was allocated to the surviving wife and 15% was allocated to the surviving child. Counsel fees and costs consumed 26% of the settlement.
As of August 31, 1976 Argonaut had paid $17,402.60 to the dependents. During the course of negotiating the death action settlement Martha's counsel negotiated a settlement of its lien under N.J.S.A. 34:15-40 as it existed on August 31, 1976 for the sum of $12,992, less counsel fees and costs, or a net amount of $8,461.33, with Argonaut's claim representative. This compromise represented 75% of Argonaut's total lien to date. Argonaut's claims manager executed a "satisfaction of lien" which clearly expressed its intention to reserve its right to credit against future compensation payments. The "satisfaction of lien" stated:
It is understood that the execution of this Satisfaction of Lien shall in no way determine the amount of credit to which Argonaut Insurance Company is entitled against the full recovery by virtue of the Worker's Compensation Statute of the State of New Jersey relating to liens for third party recovery.
The covering letter forwarding the "Satisfaction of Lien" to Martha's counsel stated:
Our furnishing this Satisfaction of Lien is only for the purpose of helping Mrs. Brumfield obtain the proceeds of the settlement.
It is our contention that we did agree to compromise the amounts already paid for Worker's Compensation so that Mrs. Brumfield would not be required to reimburse us in so great a sum as was then due. However, it is our contention that we are entitled to third party credit for the full amount of recovery, minus your fee and $200 Court costs. Since we shall be required to continue making payments during the infancy of Debora Eloise Brumfield, we shall make appropriate deductions from the payments made to her in accordance with the Worker's Compensation Statute.
*163 In his brief Martha's counsel candidly concedes that the stipulation of fact in the Division misled the judge of compensation into believing that Argonaut's acceptance of the net settlement of $8,461.33 after counsel fees and costs, was a settlement of any lien, past or future, against the third-party recovery. He stated:
In retrospect, reviewing the Stipulation of Fact and the accompanying letter, counsel regrets that he failed to clearly apprise the Trier of Fact that the parties did not intend this payment as a full and final settlement of the claim of the respondent against the third party proceeds, but as a partial settlement as to the $17,402.60 paid as of August 31st, 1976. Perhaps it would have been wiser to attach to the Stipulation the release and its covering letter which have been submitted with respondent's Appendix on this appeal.
Meanwhile, Martha had remarried on May 1, 1976. Argonaut, apparently unaware of the nuptials, continued to pay her and Debora $112 a week through September 14, 1976. They then stopped all payments. Partial payment was recommenced on August 17, 1977, but there was still a viable dispute about the overpayment and the extent of any future lien.
Martha filed the subject dependency claim in the Division on June 22, 1977. The judge, in his opinion from the bench, decided that Argonaut had settled its entire lien, past and future, for the $12,992, less the allowance for counsel fees and costs, or a net of $8,461.33. The judge stated:
Now, this settlement was arrived at on August 31, 1976. At that time, the respondent had paid $17,402.67. At that point this respondent settled its lien against the third party tort feasor for $8,461.33. ($12,992.00).
I'm satisfied that by agreement respondent was limited to $8,461.33. No additional lien can be asserted against the third party action following that agreement.
........
As of August 31, 1976, the respondent had paid a total of $17,402.60. They settled their third party lien for $8,461.33. The respondent thereby limited itself and waived any future lien against that third party recovery.
As we noted, the parties agree that the judge erred in this regard, no doubt because of the lack of clarity in the stipulations placed before him.
*164 On this appeal, Argonaut, in its role as Gallo Wine's compensation carrier, asserts that the judge erred "in not utilizing the total third-party recovery in satisfaction of the statutory workers' compensation lien" under N.J.S.A. 34:15-40. Argonaut contends that, because the statute refers to "the sum" recovered by an employee or hs dependents, "there is no breakdown of the third-party recovery for the purposes of determination of the employer's or workers' compensation carrier's lien." It asserts "that the third-party recovery should be considered to be a single entity for purposes of the compensation lien." Argonaut relies principally on the Supreme Court's decision in Bello v. Labor and Industry Comm'r., 56 N.J. 41 (1970), a case we consider inapposite to the present situation. Bello involved the right of the Two Per Cent Fund to receive reimbursement from a third-party recovery of $30,000 by an injured workman in a personal injury action. See, also, McMullen v. Maryland Cas. Co., 127 N.J. Super. 231 (App.Div. 1974), aff'd 67 N.J. 416 (1975) (R. 1:21-7(c) fee schedule construed in relationship to N.J.S.A. 34:15-40's compensation lien).
Martha concedes that Argonaut is entitled to some credit "on her [Debora's] portion of the third party recovery in the case at bar." But Argonaut contends that "neither the language nor the spirit of the workmen's [sic] compensation act supports the proposition that she [Debora] should be charged with a credit on her mother's share of the recovery." We agree.
We find the opinions in Blumenfield v. Rust Craft Greeting Cards, Inc., 92 N.J. Super. 244 (Cty.Ct. 1966), aff'd 94 N.J. Super. 584 aff'd 51 N.J. 1 (1967), controlling in this situation. In that case the widow had remarried and became eligible for the $1,000 statutory payment. The insurer argued that recomputation of the children's benefits should be deferred for 50 weeks during which the children would continue to receive the same reduced amount which they had when the wife had been eligible. It contended that the wife's share during this period should accumulate until it reached her $1,000 payment. In essence, as in the present case, the children's payments then would be reduced *165 because of a payment which their mother was to receive. This argument was rejected at all levels.
The County Court held:
It is inconceivable that the Legislature had ever intended, under these circumstances, that such an obligation should be transferred from a respondent and visited and imposed upon dependent children to the extent of reducing and depriving them of their benefits, which they are entitled to have and receive by virtue of the statute. For unless the statute directly provides for a deduction from compensation already awarded, such mandate may not be inferred, and therefore, none may be ordered. Black v. Cedar Grove Township, 124 N.J.L. 479 (Sup.Ct. 1940), aff'd 125 N.J.L. 272 (E. & A. 1940). [92 N.J. Super., supra at 247]
The Appellate Division affirmed per curiam, stating:
To defer the recomputation for a period of 50 weeks, as appellant suggests, until petitioner had received additional compensation benefits equal in amount to the statutory payment due her, would prejudice the two remaining dependents since, during that 50-week period, their share of compensation benefits would be only $20 per week instead of the $39.23 due them under the recomputation. [94 N.J. Super., supra at 586]
The Supreme Court also affirmed, holding that any increased burden on the employer or insurer was justified by the remedial objectives of compensation law:
The employer points out that under the view of the amendment which prevailed below, the remarriage increases the benefits employers have to pay. On the other hand, the view urged by the employer would reduce the benefits of other total dependents, for under the statute as it existed prior to the amendment the other dependents were entitled to a recomputation of the rate upon remarriage of the widow. So here, upon that remarriage, the children would have been entitled to receive a total of $39.23 per week at once, whereas under the employer's view they would receive but $10 each for a period of 50 weeks after remarriage during which the widow's share of $20 per week would accumulate to the figure of $1,000.00.
The question then is whether the Legislature intended to cut down the benefits theretofore payable to other total dependents or intended the payment to the widow on remarriage to be an additional obligation of the employer. Neither the wording of the statute nor its history indicates which of these approaches was in the legislative mind. We think it more likely that the Legislature intended the burden of the increase to be borne by the employer. This view is more in keeping with the remedial objective of the compensation law. [51 N.J. supra at 3-4]
The child's right to receive dependency payments is independent from the mother's. We conclude that the burden of paying Argonaut's lien is limited to the amount which the child *166 herself is entitled to receive from the settlement of the third-party action.
In Roberts v. All American Engineering Co., 104 N.J. Super. 1 (App.Div. 1968), certif. den. 53 N.J. 351 (1969), the insurer claimed that a third-party recovery made by the husband before his death should be applied as a credit on dependency payment made to his wife and children after his death. This court pointed out that the third-party recovery belonged totally to the husband; the wife and children should not be liable for credits on that recovery when they received dependency payments.
... Thus, when the employee recovered a judgment against the third party tort feasor, the employer, pursuant to N.J.S.A. 34:15-40, was entitled to be reimbursed out of that sum for the compensation payments it had made to the employee. The balance then remaining was the employee's to do with as he desired. He could dispose of it all before he died. His wife and children had no legal claim thereto. Indeed, the record is barren of any proof that petitioner or the children received any part thereof.
... Since the widow and children had no legal rights in the fund created by the employee's third party action, the employer has no right to be subrogated to any part of this fund by way of reimbursement to the widow and children. Cf. Ganger v. Moffett, 8 N.J. 73, 79 (1951); Guarantee Co. of North America v. Tandy & Allen Const. Co., 76 N.J. Super. 274, 278 (App.Div. 1962). Therefore, under the circumstances here present, we conclude that N.J.S.A. 34:15-40(b) does not release the employer or its insurance carrier from liability to the petitioner and her children for the dependency payments awarded to them by the trial court.
This result does not effectuate "a double recovery." Rather, it equitably carries out the purpose of N.J.S.A. 34:15-40 by "marshalling the rights and responsibilities of the several parties concerned in compensation payments where, in the course of his employment, injury or death comes to a workman as a result of the fault of a third party. * * *" United States Cas. Co. v. Hercules Powder Co., supra, 4 N.J. at 165. Moreover, this result assures the availability of an unimpaired fund for the relief of the surviving dependents of the employee, an obvious salutary objective of the Workmen's Compensation Act. [104 N.J. Super., supra at 8-9]
Drawing a clear analogy with Roberts, supra, a large portion of the third-party recovery in the case at bar belonged to Martha, the mother. The daughter, Debora, obviously, is not receiving a double recovery since she has no legal right to Martha's share of the settlement.
*167 We conclude that the judge of compensation acted properly in accepting the apportionment of the death benefit proceeds reached by the Superior Court, Law Division judge  85% to the mother and 15% to the child. Argonaut was on notice of the distribution proceeding and was free to participate, if it desired. The statute gives the court broad discretion to arrive at a fair and equitable apportionment of the death action proceeds. Jurman v. Samuel Braen, Inc., 47 N.J. 586, 602 (1966); Suarez v. Berg, 117 N.J. Super. 456 (App.Div. 1971). We find it unobjectionable for the judge of compensation to have adopted the Superior Court's apportionment, especially where the carrier had notice and a right to be heard and to protect its interests.
We recognize that the compensation carrier has the right to assert its lien to the fullest extent possible against Debora's distributive share. See McMullen v. Maryland Cas. Co., supra, 127 N.J. Super. at 237. We conclude that the carrier did not have the right to wipe out Debora's dependency benefits substantially or completely by using a potential lien against Martha's share of the settlement to erase its responsibility to Debora.
In an effort to terminate this matter as soon as possible, we will exercise original jurisdiction to establish the extent of Argonaut's lien against Debora's dependency benefits payable after the settlement of the wrongful death action. R. 2:10-5.
Argonaut's lien at the time of the compromise was $17,402.60, or 23% of the $75,000 total settlement. Debora's net distributive share of the proceeds of the wrongful death action was $8,139.36 after allowance for counsel fees and costs. We conclude that only 77% of that amount, or $6,267.31, should be exposed to Argonaut's asserted lien against her future dependency benefits. Argonaut's compromise as of August 31, 1976 was a forbearance of any claim accrued to that date against the tort recovery to the proportionate extent its lien had ripened against that sum. Thus, we conclude that Argonaut's lien claim against Debora's post-compromise and post-settlement dependency *168 benefits is limited to $6,267.31, the net sum she received, after fees and costs, reduced by 23%, recognizing the prior compromised realization by Argonaut.
On appellant's final point, we find no fault with the judge's ruling apportioning the dependency benefits owed as of August 3, 1976, one-half to each party. See N.J.S.A. 34:15-13(g).
The judgment of the Division is modified to conform to this opinion. As so modified, it is in all other respects affirmed. The matter is remanded to the Division for entry of an order consistent with this opinion. Jurisdiction is not retained.