**James Brent NEDLEY, Plaintiff,**

v.

**CONSOLIDATION COAL COMPANY, a corporation, Defendant.**

Civ. A. No. 81–0061–W(K).

United States District Court,
N.D. West Virginia,
Wheeling Division.

Jan. 4, 1984.

James G. Bordas, Jr., Wheeling, W.Va., for plaintiff.

Robert M. Steptoe, Jr., Clarksburg, W.Va., for defendant.

**MEMORANDUM OPINION**

KIDD, District Judge.

This diversity action, filed in October 1981, is before the Court upon the motion for summary judgment of the defendant (sometimes "Consol" or "Company").

---

8. The Secretary of Labor's motion to file a brief as *amicus curiae* is granted.

The action can be characterized as a "Mandolidis-type"[1] case in which the plaintiff says he was injured while he was in the defendant's employ due to the "wilful, wanton and reckless misconduct of the defendant." In *Mandolidis*, West Virginia's highest court held that misconduct which is deliberately intended is excepted from the immunity granted employers who subscribe to the Worker's Compensation Fund.[2]

## Facts

The facts reproduced here are taken from either the complaint or plaintiff's deposition unless otherwise identified.

The plaintiff (sometimes "Nedley") says that on October 15, 1979, he was injured while working underground for Consol at the McElroy Mine # 10 Coal Mine in Marshall County, West Virginia. At that time his job classification was that of "loader point operator" at the mine. In the proximity of his actual work place the Company had constructed a hut, shack or shanty made of "wood, brattice board and 16 penny nails" located along the "outside" of a railroad track which passed alongside the hut. The purpose for the hut in that location seems to be for the warmth and convenience of the point operator. The hut had a front and rear door and the rear exit is the subject of dispute. The incident giving rise to this action involved a trip of coal cars which broke loose and derailed near the location of the hut; none of the cars hit the shack. When Nedley observed the uncontrolled trip of cars he attempted to exit the hut by the rear door and this is when he says he sustained his injury. It seems that the door to the shack was stuck due to a chair and a build-up of rock dust which had accumulated at its base. He says that the following intentional misconduct of his employer caused his injury:

1. *Mandolidis v. Elkins Industries, Inc.,* W.Va., 246 S.E.2d 907 (1978).

2. § 23–4–2, W.Va.Code Ann. (1983 Cum.Supp.) and prior law provides, in part:

    \*     \*     \*     \*     \*     \*

(b) If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the

1. Construction and location of the hut.

2. Failure to install safety switches to prevent runaway trips from hitting the shack.

In his complaint, Nedley says he "suggested to and requested of" the Company that the underground shanty be reconstructed in a more substantial manner, that safety switches be installed to prevent the likelihood of coal cars striking the structure, that the shanty be relocated, that a study be conducted to determine the possible hazards imposed by the hut.

Nedley says he was very safety conscious while working in the mines and that he often reported observed unsafe conditions to his safety committee, the Company, and the Mine Safety and Health Administration. He says he became known to the Company as a complainer. He carried a copy of the mining laws when at work. Among his concerns were his "constant" complaints regarding the location and condition of the loader point hut. He said he did not know of anyone else being harmed while in the building. One of the plaintiff's witnesses said he remembered the shanty being struck by a coal car "years ago" (Skrypek Deposition at 7).

As to the location of the hut, Nedley says that due to run-away trips he had been "run out of that building seven times" prior to the occurrence giving rise to the injuries of which he now complains. However, he was never directly injured due to these run-aways.

Nedley stated in his deposition that he had never complained about the door of the hut because he "always kept it clean, free and clear of all obstruction." He says he cleaned around the door prior to his accident and, therefore, had no reason to believe the door was not working properly.

employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.

Nedley acknowledged that it was the duty of the point loader operator to clean behind the door. It seems that the primary reason for the door not opening was a chair or "bar stool" located behind the door. Nedley did not know who placed the stool behind the door.

When he saw the cars leaving the track, Nedley ran against the door three times, or "pulled a Rocky Bleier on it", and was able to squeeze out through the top portion of the opening. This effort reportedly caused the back injury.

The plaintiff has not alleged that the defendant violated any state or federal statute or regulation and the defendant, through affidavit and argument, insists there was nothing improper or illegal about either the hut or its location.

## Discussion

As stated, the defendant says there are no genuine issues of material fact in this case and says it is entitled to judgment as a matter of law. Consol has filed an affidavit and excerpts from various depositions, including the plaintiff's, in support of the motion.

The plaintiff has filed an argument in rebuttal of the Company's motion for summary judgment, affidavits and argument, but has not taken exception with the affidavits tendered by filing counter affidavits.[3] Indeed, the material facts are not disputed but the only conflict involves the conclusions to be drawn from those facts.

For purposes of ruling upon the defendant's motion the Court will accept the truth of the following:

1. The hut housing the loader point operator was of flimsy construction and existed for the comfort of the operator on duty.

2. The hut was located on the outside of a rail curve upon which coal cars regularly traveled.

3. Nedley complained of the location and construction of the hut, in addition to voicing his concern that no safety switches were located at points adjacent to the hut.[1] Nedley never complained regarding the doors to the hut.

4. On occasion, coal cars derailed near the location of the structure but such incidents never resulted in the hut being struck or any person being injured.

5. On October 15, 1979, the plaintiff observed a runaway trip of coal cars from his work place in the hut. In attempting to exit the hut and escape an anticipated collision of the cars with the hut, Nedley hurt his back. The reason for the injury was his efforts to knock open a rear door which was blocked shut by a build-up of rockdust and/or a stool lodged against the door.

6. The loader point operator was responsible for keeping the doors free and clear of obstructions.

As previously noted, West Virginia employers are immune from ordinary tort liability if they subscribe to the Worker's Compensation Fund and refrain from conduct deliberately intended to produce harm. § 23–4–2 W.Va.Code Ann. (1983 Cum. Supp.). The three key cases which discuss the notion of "deliberate intent" under this statute are: *Mandolidis v. Elkins Industries, Inc.*, W.Va., 246 S.E.2d 907 (1978); *Smith v. ACF Industries*, 687 F.2d 40 (4th Cir.1982); *Littlejohn v. ACF Industries*, 556 F.Supp. 70 (D.C.W.Va.1982).

■ As stated by West Virginia's highest court, the employer loses its immunity under Worker's Compensation if the Company's conduct is "... undertaken with a knowledge and an appreciation of the high degree of risk of physical harm to another

---

**3.** The Court has not only set forth the facts in a light most favorable to the plaintiff but has only recited facts pleaded by Nedley or contained in his deposition—the facts upon which this opinion are based are solely the plaintiff's facts.

**4.** There may be some dispute as to the nature and extent of Nedley's complaints regarding the switches and the location of the hut, but the Court will accept the plaintiff's allegations in this regard.

...." *Mandolidis v. Elkins Industries, Inc.*, 246 S.E.2d at 914. The *Mandolidis* Court construed the immunity exception to include "willful, wanton or reckless misconduct" which caused the injury. The Court was careful to mention that even gross negligence was not enough to pierce the immunity bar of the compensation laws.

In interpreting *Mandolidis*, the Fourth Circuit Court of Appeals noted that the West Virginia Court:

> ... did not intend to open its common law courts to every employee suffering injuries because of an unsafe working place or condition created or maintained by a negligent or grossly negligent employers. The *Mandolidis* standard requires substantially more than that.

*Smith v. ACF Industries, Inc.*, 687 F.2d 40, 43 (4th Cir.1982). In *Smith*, Judge Haynsworth, in explaining the type of misconduct giving rise to a "Mandolidis-type" action, stated the following:

> That the employer might have provided better protection for inattentive employees, may tend to prove negligence in some degree, but it does not prove the kind of *intentional and unreasonable exposure of employees to great, recognized risk of serious harm*, as contemplated by the *Mandolidis* standards. (*emphasis added*)

*Id.* at 43.[5]

What West Virginia and the Fourth Circuit are contemplating can best be seen by analyzing the facts of the lead cases.

In *Mandolidis*, the facts reveal that the plaintiff lost part of his hand while operating a power saw which was not equipped with a safety guard. The plaintiff's case was substantially as follows: A safety guard was required by state and federal law to be in place on all power saws. The defendant company knew that the saw had no guard in addition to knowing how dangerous this condition could be.[6] Although objecting to operation of the saw without a guard, the plaintiff was told to use the equipment or be fired.[7] OSHA inspectors had cited the company for failure to maintain such guards but the citations were ignored. The company's motive in requiring such operations was to increase production and profits. Under such allegations, the West Virginia Court believed these factors would support a trial and a verdict.

In *Smith v. ACF Industries, supra*, the plaintiff was struck by a rotating beam and suffered a broken collar bone and the Fourth Circuit said it was improper to allow the case to go to a jury where the proof established: The condition which caused the plaintiff's injury had existed for nine years and had resulted in no serious injury. The area of the rotation beam contained visual and audible warning systems. The plaintiff was aware of the condition in the area of his injury but did not heed the warning indicators and did not look before entering the area of danger. The evidence did not establish that the company knew that any of the warning devices were malfunctioning. Based primarily upon these factors, the *Smith* court held that it was error not to sustain the company's motion for a directed verdict.

The final fact pattern which will here be summarized in an effort to lend meaning to the "deliberate intention" requirement of a *Mandolidis* action is from *Littlejohn v. ACF Industries Corp.*, 556 F.Supp. 70 (D.C.W.Va.1982). Plaintiff Littlejohn was a brakeman at the defendant's railroad repair facility. Littlejohn lost his hand while attempting to open a coupling on rail cars. In a light most favorable to the plaintiff, the evidence adduced at trial revealed: The plaintiff received less than two days orientation as a brakeman before assuming his duties in that job, and worked nineteen days before his injury. Littlejohn was in-

---

**5.** Actual knowledge by an employer that it is exposing its workers to an unreasonable, recognized risk of serious harm was also the standard followed in *Marshall v. Sisters of Pallotine Missionary Soc.*, 703 F.2d 92 (4th Cir.1983).

**6.** Other employees had been injured by saws without guards.

**7.** An employee had indeed been fired for refusing to operate a saw without a guard.

structed to stand away from cars when they were moving together preparatory to coupling. However, the plaintiff maintained that the company's practice condoned coupling and uncoupling by hand. The company failed to instruct Littlejohn on communication procedures between brakeman and engineer, and, in any event, the company did not observe proper communication procedures. The plaintiff did, however, attempt to signal the engineer to halt the trips so he could try to open the coupling. There was some evidence that lighting at the place of the injury was inadequate but there is little likelihood that there was a causal connection between lighting and the injury. Under this summary of essential facts, the trial judge granted judgment N.O.V. for the company, saying that the defendant's misconduct "rises no higher than one of negligence."

■ The three *Mandolidis* cases in addition to the other cases decided under the deliberate intention exception contained in the West Virginia Worker's Compensation laws have turned upon some combination of the following factors:

1. Whether the complained of condition had resulted in previous death or injury (and the nature of any injury).

2. Whether the condition had been recognized as violative of state or federal law or accepted industry practice.

3. The nature and extent of any training or indoctrination given by the employer to the employee relevant to the condition giving rise to the injury.

4. Knowledge by the employer that the injury causing condition had a propensity to injure.

5. The employer's attitude and response to voiced complaints of employees to the injurous condition.

6. The source and frequency of concerns calling attention to the injury producing condition.

7. The length of time which elapsed between the time the condition became apparent until the date of the injury. What likelihood existed that the existing condition would produce serious injury.

8. The reason the employer allowed the condition to exist.

9. Assuming that some hazard was created by the lack of certain safety precautions what, if any, safety features were in place or practiced.

The existence or nonexistence of some number of these factors, together with the seriousness of the factors present create a formula for aiding in the determination as to whether an employer has deliberately intended to injure its workman, has acted in a willful, wanton and reckless manner, or has acted with actual knowledge that it is unreasonably exposing its employees to "great, recognized risks of serious harm."

■ Returning to the case at bar with this discussion in mind, what has Nedley offered to prove in this case?

The hut in which Nedley was hurt existed for many years and never contributed to any previous accident or injury.

With regard to the location or construction of the hut being violative of any law, the defendant's affiant says no law, rule or regulation has been violated by the existence, location or condition of the shanty.

Nedley was an experienced miner and was aware that the duties of the point loader operator included keeping the doors free and clear of debris. There is no question but that the plaintiff knew his job and was familiar with its requirements.

The reason the hut existed at all was for the comfort and convenience of the point loader operator. This fact is not in dispute and no one argues that the structure contributed any benefit to the employer or was required by law or contract. Nor was the point loader operator required by the company to remain in the hut during his work shift.

The only factor which makes this matter deserving of serious consideration is the fact that Nedley complained of the hut and its location on several occasions. The defendant seems to suggest that since Nedley was a "chronic complainer" (which Nedley admits), his complaints did not deserve serious consideration. Such contention is with-

out merit. The Court is of the opinion that "chronic complainers" have a place in the ultra hazardous business of underground mining if the complaints are aimed at safety consciousness. However, a safety complaint must be grounded upon reason before it deserves attention. No employer can be required to accommodate every complaint or concern of its workmen. Twenty employees will be able to suggest twenty different ways to improve most job functions or practices in most industries. This is good and is a statement of the quality of the American worker. Therefore, before a company can be legally charged with the responsibility of changing practices or improving safety, the company must be put on notice that its existing practices or measures to insure safety are inadequate. This is the point where most of the other above-listed factors enter the picture. An employee's complaint does result in immediate and actual notice of a potential hazard. This notice, when combined with other factors such as prior accident or injury, the likelihood that the condition or practice will cause harm, the reason for the existence of the condition, the time the condition has existed without causing harm or damage, and whether the condition is contrary to law or accepted practice, will result in a complaint deserving of a remedy and having the potential of Mandolidis-type liability.

In essence, to overlook or ignore a naked safety complaint may well be negligence; to overlook or ignore a complaint which is founded upon good reason, as exemplified by the factors listed, would surely be indicative of deliberate intent to injure.

*All* of the facts upon which this opinion is based have been taken from the plaintiff's pleadings and sworn statements or the inferences to be drawn therefrom.

Genuine issues of fact may remain in this case [8] but the Court is of the firm opinion that no issue of *material* fact exists. In addition, if all of the material facts pleaded, stated, or even argued by Nedley are taken as true, he cannot prove that Consolidation Coal deliberately intended his injury.

It is rather elementary that summary disposition is not a favored way of deciding cases. It is an extreme remedy and should be used sparingly. *Norfolk Monument Co. v. Woodlawn Memorial Gardens, Inc.,* 404 F.2d 1008 (4th Cir.1968); *rev. on other grounds,* 394 U.S. 700, 89 S.Ct. 1391, 22 L.Ed.2d 658. Summary judgment has been held to be unwarranted unless the moving party has established a right to judgment "with such clarity as to leave no room for controversy" and the nonmoving party would not be entitled to recover under any discernible circumstances. *Portis v. Folk Const. Co., Inc.,* 694 F.2d 520 (8th Cir. 1982); *Bellflower v. Pennise,* 548 F.2d 776 (8th Cir.1977).

Many purposes have been said to be furthered by Rule 56 relief, including that of judicial economy, elimination of meritless disputes,[9] speedy dispute resolution,[10] and "smoking out" a case.[11]

In this case Nedley's facts would certainly preclude summary judgment if any degree of negligence would support his claim. However, the plaintiff's facts simply do not allow a legal conclusion that Consolidation Coal conducted itself in a manner deliberately intended to injure Nedley.

For the reasons set forth herein, the Court is of the opinion that there are no genuine issues of material facts, that the defendant is entitled to judgment as a matter of law and that the motion of the defendant for summary judgment should be granted.

Judgment shall be entered accordingly.

---

8. *For example,* the number of complaints Nedley made regarding the hut, the exact nature of his complaints, or to whom the plaintiff complained. As stated, the Court is assuming several complaints regarding location and construction made to the Company as well as his fellow employees.

9. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2nd Cir.1980).

10. *Minnesota Min. & Mfg. Co. v. U.S. Rubber Co.,* 279 F.2d 409 (4th Cir.1960).

11. *Bland v. Norfolk & S.R. Co.,* 406 F.2d 863 (4th Cir.1969).