326 S.E.2d 427

**Sandra MOONEY, Admx., etc.**

v.

**EASTERN ASSOCIATED COAL CORP.**

**Sandra MOONEY, Admx., etc.**

v.

**EASTERN ASSOCIATED COAL CORP.**

Nos. 15931, 15932.

Supreme Court of Appeals of
West Virginia.

Dec. 21, 1984.
Dissenting Opinion Feb. 6, 1985.

R. Rodney Jackson and Rebecca Baitty, DiTrapano & Jackson, Charleston, for appellant.

H.G. Shaffer, Jr. and Charles S. Piccirillo, Shaffer & Shaffer, Madison, for appellee.

HARSHBARGER, Justice:

These are appeals of a final judgment of the Circuit Court of Boone County in a civil suit involving the deliberate intent provisions of our former Workers' Compensation Act, W.Va.Code, 23–4–2 [1969],[1] that we discussed at length in *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978). Upon a jury verdict of $850,000 for Sandra K. Mooney and her daughter, the court awarded $35,062.00 damages, plus costs. Eastern Associated Coal Corporation claims that there was insufficient evidence of deliberate intent to support any verdict, and Mrs. Mooney

---

**1.** The 1983 amendments to this provision are not in issue in this case. *See* 1983 W.Va.Acts, ch. 192.

pleads that the trial court erroneously reduced the jury award by the value of workers' compensation benefits to which she and her daughter are entitled, and wrongly calculated those benefits.

On February 2, 1977, Roger Dale Mooney, a twenty-eight-year-old coal miner employed by Eastern, died of injuries he sustained in a roof fall two days before. His widow and their seven-year-old daughter, Melissa, were awarded workmen's compensation dependents' death benefits per W.Va.Code, 23–4–10.

In her civil suit for compensatory and punitive damages for Eastern's willful, wanton and reckless misconduct in directing her husband to work on premises it knew were extremely dangerous and violated federal and state safety standards, causing his death, the jury was not permitted to hear evidence about worker's compensation benefits. It returned a verdict against Eastern specifying that $350,000 was compensatory damages for Mrs. Mooney and $500,000 was compensatory damages for Melissa, but awarding no punitive damages.

Thereafter, the trial judge took evidence to determine whether to reduce the jury award by the amount of the Mooneys' compensation benefits. Both parties presented experts to testify about the present value of future benefits.

W.Va.Code, 23–4–2 provides, in pertinent part:

> If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, *as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.* (Emphasis supplied.)

## I.

In the Syllabus of *Cline v. Joy Mfg. Co.*, 172 W.Va. 769, 310 S.E.2d 835 (1983),

we stated the burden of proof a plaintiff carries in a *Mandolidis* action:

> Under *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978), it is essential, in order for an injured employee to recover, that the employer's misconduct must be of an intentional or wilful, wanton and reckless character, that the employer must have knowledge and appreciation of the high degree of risk of physical harm to another created by such misconduct, and, of course, that the employer's action must be the proximate cause of the injury.

Acts that are simply negligent do not meet this test. *Id.*

Here, it was admitted that the roof in the section of the mine where Mooney was killed was in an extremely dangerous and hazardous condition, that there had been roof falls there both before and after the fall that killed him, including one a few days before, and that Eastern had received a number of citations for federal mine safety standards violations in that section. Most of the evidence related to measures taken by Eastern and its supervising employees to correct the safety violations and to control the condition of the roof up to the day of the fall. The principal issue was whether Eastern's actions were so inadequate as to constitute wilful, wanton and reckless misconduct.

Our review of the voluminous trial transcript supports our conclusion that reasonable minds could differ about whether the evidence warranted a finding of deliberate intent to produce injury or death, and that the issue was properly submitted to a jury. *See Weirton Savings and Loan Co. v. Cortez*, 157 W.Va. 691, 203 S.E.2d 468 (1974). Accordingly, we will not reverse the jury's verdict on liability.

## II.

Mrs. Mooney contends that Eastern could not offset workers' compensation benefits against her and her child's damages; or alternatively, that the amount of any offset was a jury question.

The plain language of W.Va.Code, 23–4–2 evinces an intent that damages in a *Mandolidis*-type suit are "for excess damages" above those provided by compensation.

The statute is silent, however, about how this intent is implemented mechanically at trial. These parties have assumed that the statute contemplates an offset in mitigation of damages in the nature of a proceeding for remittitur, to be decided by the trial court after the return of the jury's verdict. This approach has been taken by the only jurisdiction that appears to have decided the question. In *Bibby v. Hillstrom*, 260 Or. 367, 490 P.2d 161 (1971), the Supreme Court of Oregon concluded that a provision of that state's workmen's compensation law virtually identical to the above-quoted portion of W.Va.Code, 23–4–2,[2] required submission of any claim of offset for compensation benefits to the trial court in supplemental proceedings after jury trial on liability and the amount of the plaintiff's total damages. The court concluded that introduction of any evidence about compensation benefits during the jury trial would be highly prejudicial to the plaintiff, since "[j]urors have humane instincts and ordinarily do not like to penalize persons for their acts, even intentional ones, when the party injured by such acts has another means of being reimbursed which will not immediately cost any individual anything." 260 Or. at 370, 490 P.2d at 162. *See also Weis v. Allen*, 147 Or. 670, 35 P.2d 478 (1934).

This interpretation cannot be sustained against the plain language of W.Va.Code, 23–4–2 that provides a "cause of action ... for any excess of damages over the amount" of the plaintiff's compensation award. Implicit is a requirement that a fact finder know what the compensation award will be.

Assessment of damages is the jury's job. *See, e.g., Kesner v. Trenton*, 158 W.Va. 997, 216 S.E.2d 880 (1975); *Campbell v. Campbell*, 146 W.Va. 1002, 124 S.E.2d 345 (1962); *Crum v. Ward*, 146 W.Va. 421, 122 S.E.2d 18 (1961); *Legg v. Jones*, 126 W.Va. 757, 30 S.E.2d 76 (1944). Unlike other instances in which the method of adjusting damages has been left to the trial court or the parties, *see Groves v. Compton*, 167 W.Va. 873, 280 S.E.2d 708 (1981); *Butler v. Smith's Transfer Corp.*, 147 W.Va. 402, 128 S.E.2d 32 (1962), in a *Mandolidis* action, evidence of the value of compensation benefits *must* be submitted to the jury with instructions that any verdict for the plaintiff shall be for damages in excess of such benefits.

Generally compensation benefits will be sums certain, and only when there are awards of death benefits and life awards extending indefinitely will a jury need to decide them to arrive at its verdict for excess damages. Juries are called upon to value future damages everyday. *See, e.g., Turner v. Heston*, 172 W.Va. 80, 303 S.E.2d 718 (1983); *Flannery v. United States*, 171 W.Va. 27, 297 S.E.2d 433 (1982); *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974). There is no reason why they cannot competently determine future compensation benefits for purposes of finding damages for plaintiffs' injuries exceeding those amounts.

### III.

We should provide guidance about how the value of dependent's death benefits may be proved.[3]

The principal controversy here is about the way the aggregate value of compensation benefits payable in the future should be computed. Mrs. Mooney contends that the court based its calculations

---

**2.** Or.Rev.Stat. § 656.156(2) (1983) provides:

"If injury or death results to a worker from the deliberate intention of his employer to produce such injury or death, the worker, the widow, widower, child or dependent of the worker may take under ORS 656.001 to 656.794, and also have a cause for action against the employer, as if such statutes had not been passed, for damages over the amount payable under those statutes."

**3.** An employer has the burden of proof because, although its right to credit for benefits paid or payable is not a remittitur, it is a reduction of an employer's exposure to damages. *See Huntington Easy Payment Co. v. Parsons*, 62 W.Va. 26, 57 S.E. 253 (1907).

on such speculative factors as the assumption that she would remain eligible to receive death benefits throughout her projected lifetime,[4] that the state average wage would increase at a constant per annum percentage rate throughout that period, and that she would at some point in the future become eligible to receive benefits from the disabled worker's relief fund.[5]

■ Matters that can be proved with reasonable certainty by accepted scientific evidence or expert testimony, such as proof of life expectancy by reliable mortality tables or proof of expectancy of remarriage by reliable evidence, may be considered in computing the value of a compensation award for purposes of establishing the basic amount from which damages may be calculated under W.Va.Code, 23-4-2. And while there may be competent and reliable evidence upon which economic trends may be predicted, the proof here falls far short of such certainty as would sustain the calculations presented.[6]

■ There was evidence that in certain cases, the Workers' Compensation Commission establishes a "reserve fund figure" that represents the Commissioner's estimate of the total value of an award of dependents' death benefits. There was little evidence about how this fund figure is achieved or the purpose for which it is used. If it is shown, by testimony of a qualified representative of the Commission, that such a figure or fund does exist, or is required to be set aside by a self-insured employer, and that it is calculated with reasonable certainty, it would be by far the best proof of compensation benefits for purposes of calculating excess damages under W.Va.Code, 23-4-2.[7]

■ This trial court reduced the entire verdict to present value. A verdict in a wrongful death action may include both pecuniary and non-pecuniary damages. Although we have never reached the issue, the general rule in most jurisdictions appears to be that while an award of pecuniary damages, such as loss of future income, should be reduced to present value, non-pecuniary damages, such as mental anguish, should not. *See* 22 Am.Jur.2d *Damages* § 108 (1965); 22 Am.Jur.2d *Death* § 124 (1965). On remand, the trial court should instruct the jury to reduce any pecuniary damages to present value in accordance with accepted standards, but to make no reduction for non-pecuniary losses for which they find Mrs. Mooney entitled to damages.[8]

■ For the reasons stated above, we conclude that the trial court erred in not submitting the issue of the value of the

4. Under W.Va.Code, 23-4-10, the eligibility of the widow of a deceased employee to receive death benefits terminates upon her remarriage. The eligibility of a dependent child to receive death benefits ordinarily terminates at age eighteen, but may continue up to age twenty-five so long as the child is a full-time student.

5. W.Va.Code, 23-4A-1, *et seq.* (1981 Replacement Vol.) establishes the disabled worker's relief fund to provide additional benefits to individuals whose monthly life award or death benefits payments fall below one-third of the state average weekly wage per month. The money comprising the fund is derived from annual transfers of funds from interest earned during the previous year on the Commission's investments and from the assessments levied against self-insurers under W.Va.Code, 23-2-9.

6. One of the expert witnesses projected a 9% annual increase in the state average weekly wage for the year 1980 based on his analysis of growth rate data available for the years 1973–1979. He then projected Mrs. Mooney's entitlement to disabled workers' relief fund benefits, which are tied to the state average weekly wage, and the amount thereof, by assuming that the average weekly wage would increase at the same annual rate for the rest of Mrs. Mooney's life. While such a projection may be reasonably accurate for a period of one, or even several years, there was absolutely no evidence to show that the growth rate would remain constant for a period of almost fifty years, Mrs. Mooney's projected life expectancy. Accordingly, the evidence of disabled workers' relief fund benefits was entirely speculative.

7. Of course, the parties may challenge the Commission's calculations with their own competent proof.

8. In reducing damages for loss of the decedent's future income to present value, the total value of the compensation award should first be subtracted from the total loss of income found to have been suffered by the beneficiaries and the resulting figure reduced to present worth.

plaintiff's worker's compensation award to the jury. Accordingly, we reverse the judgment of the Circuit Court of Boone County and remand the case for a new trial on the issue of damages in accordance with the principles enunciated herein.

Affirmed in part; reversed in part; and remanded.

MILLER, Justice, dissenting:

## I.

My dissent in this case goes to the issue of liability. In particular, I believe as a matter of law, that the plaintiffs failed to show intentional or wilful and wanton misconduct on the part of the employer. This is the standard that must be met under W.Va.Code, 23–4–2, in order for an injured employee or his dependents to recover when the employee's accident is otherwise covered under our Workers' Compensation Act. Syllabus, *Kane v. Corning Glass Works,* W.Va., 331 S.E.2d 807 (1984) *citing* Syllabus, *Cline v. Joy Mfg. Co.,* 172 W.Va. 769, 310 S.E.2d 835 (1983); *Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978); *Collins v. Dravo Contracting Co.,* 114 W.Va. 229, 171 S.E. 757 (1933).

The majority disposes of all of the facts surrounding the accident in one paragraph, 326 S.E.2d at 429, and concludes: "Most of the evidence related to measures taken by Eastern and its supervising employees to correct the safety violations and to control the condition of the roof up to the day of the [roof] fall." I quite agree with this statement as the record is replete with the efforts made by Eastern. Eastern revised the roof bolt plan, previously approved by federal and state inspectors, to increase the number of roof bolts. The length of the roof bolts was also increased to provide better anchoring. Furthermore, additional cribbing and postal supports were installed to bolster the support to the roof. To my mind, these added efforts dispel any conclusion that Eastern was acting in an intentional or wilful manner to injure its employees.

Although the majority states "that Eastern had received a number of citations for federal mine safety standards violations in that section," this is not borne out in the record. The majority may be confused about entries made before each shift by the section foremen and union firebosses as required by W.Va.Code, 22–2–21. This provision directs firebosses or certified persons acting as such to make preshift inspections of a mine and record any deficiencies or dangerous conditions they discover. These inspections are not those made by State mine inspectors under W.Va.Code, 22–1–13 and –14, and, therefore, do not give rise to formal State administrative violations under Sections 13 and 14. The record in this case does not show any State mining law violations cited against Eastern in this area prior to this accident.

Furthermore, testimony by Eastern's supervisor, Mr. Newsome, indicated that each of the conditions noted on the preshift inspections had been corrected prior to permitting any crew to work in the involved entry. At least half of the thirty pages introduced from the fireboss books related to rock which came down in the ordinary course of mining the coal or placing roof bolts in new areas as the mining advanced. I believe the record amply justifies the conclusion that Eastern was actively taking steps to keep this area in a safe condition.

There were two federal mining act violations issued prior to the accident. (Plaintiff's Exhibits 2 and 3). The first violation was in a completely different location, i.e., No. 2 entry of the 9 butt, than where the accident occurred, i.e., No. 1 entry of the 9 butt. The other violation dated January 17, 1977, did relate to the No. 1 entry and showed that several of the roof bolts were not properly anchored and that some of the timber posts were not set straight against the roof. The violation form indicated that this condition "has not created an imminent danger." The company was given until noon the next day to correct the condition. Testimony at trial from Mr. Anderson, a federal coal mine safety inspector, indicated that this violation had been corrected prior to January 31, 1977, the day of the accident. Certainly, this violation and its

prompt remedy by Eastern does not reflect wilful or intentional conduct calculated to inflict injury or death on its employees.

When one contrasts the evidence in this case with what existed in *Mandolidis*, where we said there was sufficient evidence to carry the question to the jury, it is manifest that a directed verdict should have been granted. In *Mandolidis*, federal inspectors ordered the employer not to use a rotary saw unless its safety shield was reinstalled, but the employer ordered its workers to use the saw without the shield. Here, there was no showing of any disobedience to a federal safety order. The one federal violation found prior to the accident was promptly corrected.

There was no evidence in the present case that prior to the accident any employees had believed that this particular section constituted an imminent danger to their health and safety and refused to work in it until ordered to do so, as in *Mandolidis*.[1] This case rises no higher than *Cline v. Joy Mfg. Co.*, 172 W.Va. 769, 310 S.E.2d 835 (1983), where we refused as a matter of law to find liability when an employee was injured on a mining machine that had a known defective operating lever. *See also Kane v. Corning Glass Works*, W.Va., 331 S.E.2d 807 (1984) (defective fork lift cab shield accident insufficient as a matter of law).[2]

## II.

The majority opinion, particularly in Syllabus Point 1, indicates that in a *Mandolidis* suit, the issues of liability, damages and the workers' compensation benefits offset must be decided in a single trial. While such a procedure may be appropriate in certain cases, I believe that in many cases, having a jury address all of these extremely complex issues and mathematical calculations in a single trial would be unduly burdensome. A better procedure, one that was followed by the trial court in this case, would be to have a bifurcated trial. The first part of the trial would decide liability and damages under *Mandolidis*, and the second phase would decide the workers' compensation benefits offset received by the plaintiff. By bifurcating the trial in this manner, the jury would be able to separate the damage calculations from the offset calculations. Furthermore, if the jury finds no liability in the first part of the trial, then there would be no need to present any evidence on the workers' compensation benefits offset.

In the second part of the trial in this case, which dealt with the offset issue, the trial judge committed two errors. First, the trial judge, in deciding the amount of the offset, did not apportion the workers' compensation death benefits between the two plaintiffs. The second error, which is an outgrowth of the first, was committed when the judge calculated the total amount of receivable death benefits offset based on the widow's life expectancy and then applied this offset to the combined damage awards of the widow and the daughter.[3]

---

1. In *Mandolidis*, there had been other injuries arising from the use of the power saw without its safety shield. Moreover, an employee had been fired when he refused to operate it without the shield. The plaintiff in *Mandolidis* protested the unsafe condition and was given to understand that if he did not operate it, he would also be fired.

2. Federal courts in this State dealing with the *Mandolidis* standard have uniformly concluded as a matter of law that it has not been met. *See Marshall v. Sisters of Pallotine Missionary Society*, 703 F.2d 92 (4th Cir.1983) (employee fell on hazardous floor as a result of defect in waste disposal machine); *Smith v. ACF Industries, Inc.*, 687 F.2d 40 (4th Cir.1982) (employee injured by moving machine with inadequate safeguards); *Estep v. Chemetals Corp.*, 580 F.Supp. 254 (N.D.W.Va.1984) (employee burned when hot flux pot exploded); *Nedley v. Consolidation Coal Co.*, 578 F.Supp. 1528 (N.D.W.Va.1984) (employee injured trying to escape shed when coal cars derailed); *Littlejohn v. ACF Industries Corp.*, 556 F.Supp. 70 (S.D.W.Va.1982) (employee injured by train coupling); *Belcher v. J.H. Fletcher & Co.*, 498 F.Supp. 629 (S.D.W.Va.1980) (roofbolter injured by defective bolting machine).

3. I concur with the majority opinion's holding in Syllabus Point 1 that the workers' compensation benefits offset is a jury issue where the evidence as to the amount of the offset is conflicting and the parties request a jury trial. In the present case, the plaintiffs, at the offset hearing, did not initially assert their right to a jury trial.

The jury awarded damages in the *Mandolidis* suit totalling $500,000 for the dependent daughter and $350,000 for the widow. In his final order, the judge held that the present value of the workers' compensation benefits due the "dependents" totalled $814,938. This figure was estimated by a defense expert witness, who based his calculations on factors relevant to the widow, including her life expectancy. The defense witness made no allocation of the death benefits between the widow and the daughter. Consequently, the judge first applied the entire offset amount to the widow's $350,000 recovery and then applied the remaining balance of the offset to the daughter's award. This left a net award of $35,062.

The error in calculating the offset in this manner is that it drastically reduces the daughter's jury award based on an estimate of the amount of workers' compensation benefits due only to the widow, whose jury award was insufficient to offset the estimated benefits. To better understand this issue, it is necessary to examine the relevant portions of W.Va.Code, 23-4-10 (1975), which deals with the allocation of death benefits among the dependents of a deceased employee.[4]

Under this statute, the widow and the daughter in this case jointly received the death benefits from the workers' compensation fund. The record reveals that the widow received one check a month and that the daughter did not receive a separate check. The daughter, who was eleven years old at the time of trial, would be entitled to receive the workers' compensation benefits until she was eighteen or, if in school under W.Va.Code, 23-4-10(b)(1) (1975), until she was twenty-three.[5] Under W.Va.Code, 23-4-11, the Commissioner is empowered to apportion death benefits among dependents in a manner which is just and equitable, however, the Commissioner made no such apportionment in this case. Eastern presented no testimony as to how the monthly benefits should be apportioned between the widow and daughter nor any testimony focusing on the present day value of the daughter's share of the benefits.

Obviously, in view of her age and the comparatively few years that she would be eligible for the compensation benefits, the amount of offset that the daughter would have for her compensation benefits would be relatively small and would not significantly reduce her separate original award of $500,000. She should not have been charged with her mother's offset since it was calculated on a much longer time period, i.e., her mother's life expectancy. This lack of apportionment by the defense witness and the Commissioner resulted in the judge applying the widow's estimated $814,938 in workers' compensation benefits to not only the widow's $350,000 award, but also to the daughter's $500,000 award.

The plaintiffs have cited several cases from other jurisdictions involving statutory subrogation or liens contained in some workers' compensation statutes whereby

4. The relevant portions of W.Va.Code, 23-4-10 (1975), which are applicable because the plaintiffs' decedent died in 1977, provided:

"In case a personal injury ... suffered by an employee in the course of and resulting from his employment, causes death ..., the benefits shall be in the amounts and to the persons as follows:

\* \* \*

"(b) If there be dependents as defined in subdivision (d) of this section, such dependents shall be paid for as long as their dependency shall continue in the same amount as was paid or would have been paid the deceased employee for total disability had he lived. The order of preference of payment and length of dependence shall be as follows:

"(1) A dependent widow or widower until death or remarriage of such widow or widower, and any child or children dependent upon the decedent until each such child shall reach eighteen years of age or where such child after reaching eighteen years of age continues as a full-time student in an accredited high school, college, university, business or trade school, until such child reaches the age of twenty-three years or if an invalid child to continue as long as such child remains an invalid. All such persons shall be jointly entitled to the amount of benefits payable as a result of employee's death."

5. W.Va.Code, 23-4-10 (1975), was subsequently amended in 1978 to extend benefits to children who are full-time students until they are twenty-five years old.

an employer's workers' compensation insurance carrier is permitted to recover the amounts of compensation benefits it has paid to an injured employee or his dependents from personal injury awards received by the injured employee or his dependents against negligent third parties.

The typical fact pattern is that an employee is injured or killed at his place of work in the course of his employment. This gives rise to the injured employee's right to compensation benefits. Where the injury or death is caused by the action of a third party (not the employer), the injured employee can sue and collect damages from the negligent third party. Under some state compensation acts, where an insurance carrier pays the compensation benefits, the insurance carrier is permitted to recover the benefits paid to the employee from the damages awarded in his personal injury suit against the negligent third party. In situations where the employee is killed and his dependents receive a compensation award, the question arises as to how the compensation payments shall be allocated against each dependent's share of the personal injury award that has been awarded to them in the action against the negligent third party. The general rule is that such an allocation must be made and that the employer's compensation insurance carrier is not permitted to recover from a dependent's personal injury award more than that dependent's share of the compensation award. *See generally Holley v. The Manfred Stansfield*, 186 F.Supp. 805 (E.D. Va.1960); *Maryland Casualty Co. v. Rowe*, 256 Ark. 221, 506 S.W.2d 569 (1974); *Brocker Mfg. & Supply Co. v. Mashburn*, 17 Md.App. 327, 301 A.2d 501 (1973); *Lone v. Esco Elevators, Inc.*, 78 Mich.App. 97, 259 N.W.2d 869 (1977); *Rascop v. Nationwide Carriers*, 281 N.W.2d 170 (Minn. 1979); *Tarr v. Republic Corp.*, 116 N.H. 99, 352 A.2d 708 (1976); *Brumfield v. Gallo Wine Sales of New Jersey, Inc.*, 183 N.J.Super. 159, 443 A.2d 731 (1982); *Anderson v. Borough of Greenville*, 442 Pa. 11, 273 A.2d 512 (1971); 2A A. Larson, The Law of Workmen's Compensation § 74.31(e) (1983).

To allow the reduction of damages awarded to one person by subtracting the amount of workers' compensation benefits anticipated for another person is not the proper method for calculating the offset in a *Mandolidis* case and is fundamentally unfair. As summarized in Syllabus Point 1 of the majority opinion, an action under W.Va.Code, 23–4–2, is for damages in excess of the workers' compensation benefits due to the plaintiff. In a *Mandolidis* case, once damages have been awarded to a plaintiff, the jury should then determine the amount of workers' compensation benefits due to that plaintiff. To determine the excess or ultimate recovery in a *Mandolidis* suit, the amount of workers' compensation benefits, paid or due to be paid the plaintiff, must be subtracted from that particular plaintiff's award of damages. It was the failure to properly determine and allocate the compensation benefits between the widow and the daughter in this case that created error. This error was then compounded by charging the widow's offset against the daughter's award.

I am authorized to state that Chief Justice NEELY joins me in this opinion, and that Justice McGRAW and Justice McHUGH concur in Part II.