813 F.2d 404
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Frank R. WALLS and Mary Horton Walls, Appellants,
v.
DRAVO CORPORATION, Appellee.
and
Mobay Chemical Corporation, Defendant.
 No. 85-1975.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1986.
Decided Sept. 17, 1986.
 
 Before RUSSELL, PHILLIPS and SPROUSE, Circuit Judges.
 John Preston Bailey (James A. Byrum; Bailey, Byrum & Vieweg, on brief), for appellants.
 Alvin Lee Emch (C. Lynn Oliver; Jackson, Kelly, Holt & O'Farrell, on brief), for appellee.
 PER CURIAM:
 
 
 1
 Plaintiffs Frank and Mary Walls appeal the district court's grant of directed verdict in favor of defendant Dravo Corporation (Dravo) in this diversity action brought pursuant to Mandolidis v. Elkins Industries, Inc., 246 S.E.2d 907 (W.Va.1978). The district court concluded that the evidence introduced at trial proved, at best, simple negligence on the part of Dravo, and that therefore, the Mandolidis standard of willful, wanton and reckless misconduct had not been satisfied. We agree and affirm the judgment of the lower court.
 
 
 2
 * Frank Walls (Walls), a welder pipefitter was hired by Dravo in April of 1980 to work on a construction project at a Mobay Chemical Corporation (Mobay) plant in West Virginia. Walls was sent for a pre-employment chest x-ray, received and read written safety instructions, and attended "tool box" meetings held to discuss safety procedures. Walls also admitted attending a lecture conducted by Dravo safety personnel to discuss chemicals present at the plant.
 
 
 3
 Representatives of Dravo and Mobay met daily to discuss work to be performed by Dravo during the next shifts and to outline any necessary safety precautions. On June 2, 1980, Cecil Wade, one of Dravo's area foremen, met with two Mobay representatives, Rex Lapp and Eugene Hawkins, to discuss the pipe-changing project under way in the plant. Dravo employees were scheduled to remove the line leading to a toluene di-isocyanate (TDI) feed pump so that it could be replaced. Lapp informed Wade that Mobay employees would flush and drain the pipes before the Dravo employees began their work. The pipes are flushed to remove any of the pockets of chemicals remaining in the pipes. After the pipes are flushed, workers can then presumably change the pipes without fear of chemical leakages. Both Walls and Lapp acknowledged that if the pipes are properly flushed and drained, no residue should be present.
 
 
 4
 Wade testified that he understood it to be standard and accepted procedure to work without respirators once the lines had been flushed and drained by Mobay. Confusion exists, however, over the precise nature of the discussion between Lapp and Wade considering the use of respirators for this procedure. Lapp admitted that all purpose masks should be used even after the pipes have been drained. However, Lapp did not testify that he advised Wade of this at the June 2 meeting. Indeed, Wade testified that after the meeting he understood that masks would only be needed before the pipes were flushed and drained. At the end of the meeting, both Lapp and Wade believed that the lines would be flushed before the evening shift began that night. Lapp testified that he left orders with his men to do so.
 
 
 5
 When Walls reported for work the next morning, he was assigned to break down the TDI feed pump. He was not advised to wear a respirator. Walls testified that as he began his work, he smelled an odor which he reported to his foreman. The foreman told Walls to return to work. As Walls continued his labors, a liquid, later identified as TDI, began to run out of the pipe soaking Walls' gloves. Walls again approached his foreman and complained about the odor. After Walls' complaint was reported to the area supervisor, Wade, Mobay representatives were summoned to check the area. They did not detect any odor. Wade also went to the area and was unable to detect any odor.
 
 
 6
 Though the Mobay representatives found no serious problems in the pump area, Walls was not allowed to return to work until precautionary measures had been taken; Wade had the area sprayed with water and had a neutralizing powder put down. Walls admitted that after these measures had been taken, he did not protest returning to work in the area.
 
 
 7
 Walls testified that after finishing the job, he was having difficulty breathing. When Walls sat down outside, his foreman approached and exclaimed that "I'm going to take you all to first aid. I just found out you're supposed to have been wearing masks to do that job." Walls and his co-worker were taken to a first-aid station on the premises. The co-worker was released, but Walls was taken to the hospital where he remained for ten days.
 
 II
 
 8
 Walls brought this Mandolidis action against Dravo for damages resulting from his TDI exposure at the Mobay plant. Ordinarily, an employer such as Dravo, who is a subscriber to the West Virginia Workers' Compensation Fund, is immune from common law tort actions under the West Virginia Worker's Compensation Act, W.Va.Code Sec. 23-4-2 (1981 Repl.Vol.). In return, the employer forfeits any common law defenses to claims brought under worker's compensation. The only exception to the employer's immunity from employee's common law tort actions occurs when the employer has acted with "deliberate intention" to produce the employee's serious injury or death. In Mandolidis, the West Virginia Supreme Court interpreted this exception to include: "willful, wanton, and reckless misconduct ... undertaken with a knowledge and an appreciation of the high degree of risk of physical harm to another created thereby." 246 S.E.2d at 914.*
 
 
 9
 Walls contends that the court erred in granting Dravo's motion for a directed verdict, for viewing the evidence in the light most favorable to the non-movers, reasonable and fair-minded persons could reasonably have returned a verdict in favor of the plaintiffs. We disagree.
 
 
 10
 As this court noted in Smith v. ACF Industries, Inc., 687 F.2d 40 (4th Cir.1982), Mandolidis contemplates a much more rigorous standard of fault than negligence or even gross negligence:
 
 
 11
 Mandolidis was an operator of a table saw in a woodworking plant. He lost two of his fingers and a portion of his hand due to the fact that the saw was unequipped with a safety guard. There was evidence that the employer had removed the safety guards from the table saws for the stated reasons that their presence tended to slow production. Operation of the saw without the safety guard was a violation of both federal and state standards. A federal OSHA inspector had tagged the machines and ordered them out of operation, but the employer removed the tags and continued the operation without the safety guards. There had been previous injuries to other employees from unguarded saws, and a former employee had been discharged for refusing to operate a saw without the guard. Protesting employees were given to understand that a refusal to operate an unguarded saw would result in their being sent home or discharged. When one witness spoke to the plant manager about the plaintiff's injuries due to the absence of a guard, the manager was said to have responded "So What?" "He's getting compensation."
 
 
 12
 687 F.2d at 43.
 
 
 13
 The facts in the instant case differ markedly. Dravo violated no federal rules. There was no evidence of prior injuries or death from TDI exposure at the plant nor was there any testimony indicating that Walls or any other Dravo employee had been fired or threatened for refusal to work after detecting an odor in the work area. The evidence adduced at trial reveals that Walls' TDI exposure was the result of an isolated accident rather than any kind of continuing willful misconduct on the part of the employer as in Mandolidis.
 
 
 14
 Likewise, cases following Mandolidis have strictly construed the willful, wanton and reckless standard. In Nedley v. Consolidation Coal Co., 578 F.Supp. 1528 (N.D.W.Va.1984), for instance, the court enumerated nine factors to be considered in determining whether an employer has acted with "deliberate intention" under Mandolidis. Those factors included such elements as the nature and extent of safety training given by the employer, the violation of any federal, state, or industry standards, the nature and amount of notice of the alleged dangerous condition, and so forth. Walls would have difficulty establishing the presence of even one of these factors. See also Cline v. Joy Manufacturing Co., 310 S.E.2d 835, 838 (W.Va.1983); Estep v. Chemetals Corp., 580 F.Supp. 254 (N.D.W.Va.1984).
 
 
 15
 We find that Dravo's conduct here could amount to nothing more than simple negligence. Safety precautions had been taken, no previous injuries had been reported, and action was taken quickly to rectify the problem once an odor was detected. While Dravo's response, spraying the work area with water and putting down a neutralizing powder, may have been inadequate or even negligent, it simply did not rise to the level of willful, wanton and reckless misconduct envisioned under Mandolidis. Accordingly, we affirm the judgment of the lower court.
 
 
 16
 AFFIRMED.
 
 
 
 *
 Section 23-4-2 was substantially amended in 1983. The amended statute replaces the Mandolidis standard of willful, wanton and reckless misconduct with far more stringent reuqirements which plaintiffs must meet in order to bring such actions under the "deliberate intention" exception. A plaintiff must either prove the employer's conscious, subjective and deliberate intention to produce the injury or death pursuant to Sec. 23-4-2(c)(2)(i) or he must establish, by a preponderance of the evidence, five specific elements set forth in Sec. 23-4-2(c)(2)(ii). The present action, however, was brought under the old statute, and, thus, we will not refer to the 1983 amendments to Sec. 23-4-2