Edgar B. **GREENE** and Rose Anna Greene, Plaintiffs,

v.

**CAROLINA FREIGHT CARRIERS, Defendant.**

**Civ. A. No. A:86–0852.**

United States District Court, S.D. West Virginia, Parkersburg Division.

July 8, 1987.

Jeffrey B. Reed and George E. Lantz, Lantz, Palmer, Tebay & Reed, Parkersburg, W.Va., for plaintiffs.

Mary H. Sanders & John R. Fowler, Fowler & Sanders, Charleston, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending before the Court is the motion of the Defendant for summary judgment. The Plaintiff has responded and the Court now deems the matter mature for consideration.

### I. *Background*

Edgar Greene, the principal Plaintiff, was injured in a fall from a truck on January 25, 1985. The truck was owned and operated by his employer, Carolina Freight Carriers. As a result of the fall, Mr. Greene suffered serious injuries and now claims to be fully disabled.

The accident occurred at the Defendant's headquarters in Mineral Wells, West Virginia. Mr. Greene had been asked to back tractor number 1604 out of a garage so that another tractor could be placed under the trailer then attached to tractor number 1604.

Mr. Greene attempted to climb into the tractor in his usual manner. He put his right foot on the bottom step which was twelve to fourteen inches off the ground. He grasped with his right hand a grab bar which was to the right of the door. He then swung his body to the left reaching up with his left foot for the top step. The top step was just below the door to the cab, approximately four feet from the ground. Before he could get his left foot on the top step, however, the bottom step gave way; he lost his grip on the grab bar and fell straight backwards into snow and ice. Although Mr. Greene did not initially appear to be injured, he developed soon thereafter severe problems with his back and knee.

The step in question had broken fifteen days prior to Mr. Greene's accident. The Defendant at that time called upon Vance Griffen, a local, self-employed mechanic, to temporarily repair the step. Griffen examined the step and informed the Defendant that it could not be repaired. At the Defendant's insistance, Griffen welded the left side of the step where the break had occurred. He did this by using a bolt to reinforce the tubular metal. After completing the job, he allegedly told officials of the Defendant that he could not guarantee the job.

Griffen has testified that after he informed the Defendant of his unwillingness to guarantee the step, he assumed that the tractor would be "red lined," that is, taken out of service. The Defendant did order a new step for the tractor, but it did not remove the tractor from service.

The record is not clear whether the step broke on the left side, where it had been

welded by Griffen, or on the right side. In its brief the Defendant first states that it broke on the left side. Later, however, it represents that the step broke on the right side. The dispute, though potentially significant, is not material to the Court's disposition of this case.

## II. *Discussion*

This is what has come to be known popularly as a *Mandolidis*-type[1] action. The name derives from the 1978 case in which the West Virginia Supreme Court was perceived to have liberalized the exception to an employer's immunity from suit pursuant to the workers compensation laws. In the wake of that decision, the West Virginia Legislature revised the statutory exception to immunity. It is the revised statute which applies to this action.[2] The statute contains five facts which an employee must prove to establish that his employer acted with deliberate intent to injure him.[3] They are as follows:

"(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and of the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule regulation or standard was specifically applicable to the particular work and working condi-

tion involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition."

*W.Va.Code*, § 23-4-2(c)(2)(ii).

The Defendant attacks the Plaintiffs' case on all five of the facts. The Court, however, deems it necessary to discuss only one: the requirement that the specific unsafe working condition be in violation of a statute, rule, regulation or well-known standard.

There is no dispute that the specific working condition in question is the step on tractor number 1604. Therefore, the issue having been raised by the Defendant on its summary judgment motion, the burden is on the Plaintiffs to demonstrate that there is a genuine issue of material fact with regard to the violation of a statute, rule, regulation or well-known standard as such pertains to the step. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Plaintiff stakes its case on the violation of a regulation. Specifically, it points to a regulation promulgated by the Department of Transportation. That regulation reads as follows:

"Parts and accessories shall be in safe and proper operation condition at all times. These include those specified in Part 393 of this subchapter and any addi-

---

1. *Mandolidis v. Elkins Industry, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978).

2. For further discussion of the *Mandolidis* decision and its aftermath, see *Handley v. Union Carbide Corp.*, 620 F.Supp. 428 (S.D.W.Va.1985), *affirmed*, 804 F.2d 265 (4th Cir.1986).

3. The five facts are contained in the second prong of the statute's deliberate intent exception. Under the first prong, *W.Va.Code*, 23-4-

2(c)(2)(i), an employer loses its immunity if it "acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee." *Id.* There is no allegation here that the employer actually, subjectively intended to cause Mr. Greene harm. Rather, Mr. Greene contends that the facts are such as to impute deliberate intent to the Defendant as a matter of law.

tional parts and accessories which may affect safety of operation, including but not limited to, frame and frame assemblies, suspension systems, axles and attaching parts, wheels and rims, and steering systems."

49 C.F.R. § 396.3(a)(1) (1985). The Plaintiffs argue that "[t]his federal safety regulation specifically covers the step or stirrup of tractor 05–1604." Plaintiffs' memorandum at 8. They further argue that the regulation "is not a general safety regulation requiring a safe work place or equipment." *Id.* at 9. The Court respectfully disagrees.

As the Court noted in *Handley*, "[t]here is inherent difficulty in ascertaining the intent of the West Virginia Legislature because its published proceedings do not contain formal legislative histories such as a record of committee debate." 620 F.Supp. at 435 n. 22. On the other hand, the intent of the Legislature is readily discernable where it has employed unambiguous language as to detail. Such is the case with the third required fact.

■ From a reading of the revised deliberate intent statute, the Court readily accepts that the West Virginia Legislature intended only egregious acts or omissions by the employer to be actionable. One measure of the employer's culpability would be whether it ignored or circumvented a known legal duty—not the duty contemplated by principles of negligence law, but rather a duty which has been made express and specific by positive law or industry custom and practice.

■ To put the employer on notice, and to evidence its egregious conduct, the statute or standard must *specifically* address the unsafe working condition in question. It is not enough to prove that a part on a piece of machinery was defective and that a statute or regulation required all parts to

be in good working order. Such a statute says very little to the employer.

■ The statute is explicit on this point. A "regulation ... generally requiring safe ... equipment" is insufficient. *W. Va. Code,* § 23–4–2(c)(2)(ii)(C). The regulation relied upon by the Plaintiffs is of this type. It does not contain any standards or requirements applicable to steps in particular or entrances to tractors in general. It is quite abstract in its command. Indeed, the regulatory language quoted by the Plaintiff falls under a paragraph entitled "General." [4]

As this discussion reveals, an employee may be at a disadvantage, insofar as legal action is concerned, working in a trade, or perhaps in a particular area of a trade, which has not been heavily regulated or given rise to well-established standards. For instance, the Department of Transportation could have legitimately decreed here that all steps be replaced every two years or that they be replaced at the first report of rust. Hence, to some degree, under the statutory scheme adopted by the West Virginia Legislature, an employee is vulnerable to the priorities of the regulatory authority.

### III. *Conclusion*

That the Plaintiffs may have a fairly good case considering only the other four facts is of no moment. The statute leaves no room for flexibility; the Legislature intended all five facts to be proven. Moreover, the focus is not on giving every injured employee a remedy; the workers' compensation system was established for that purpose. Rather, the focus is on denying the employer the benefit of its immunity when its conduct is so outrageous as to fall outside the accepted standards of conduct—standards imposed from without by the state or from within by the industry.

For the foregoing reasons, the Court grants the Defendant's motion for summa-

---

**4.** In contrast to the rather general statement regarding the working condition of all parts, other regulations found near the regulation relied upon by the Plaintiff, are quite specific with regard to standards and requirements for the following truck parts: lamps, reflectors, turn signals, brakes, emergency brakes, windows, windshields, fuel system, coupling devices, tires, sleeper berths, heaters, windshield wipers, defrosting device, rear-vision mirrors, speedometer, exhaust system, floors, flags, television receivers, interior noise levels, fire extinguisher and shifting or falling cargo. See 49 C.F.R. § 393.

ry judgment and will enter judgment in favor of the Defendant and against the Plaintiffs on the Plaintiffs' complaint.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.