**Rosalie Lena YEATER and Rosalie Lena Yeater, as Executrix of the Estate of Robert Yeater, Plaintiff,**

v.

**ALLIED CHEMICAL COMPANY and Olin Corporation, Defendants.**

**Civ. A. No. 88–00017–W(S).**

United States District Court, N.D. West Virginia.

Jan. 15, 1991.

David A. Jividen and Donna Crow, Wheeling, W. Va., for plaintiff.

Thomas J. Hurney, Jr., Charleston, W. Va., for Olin Corp.

Paul T. Tucker, Wheeling, W. Va., for Allied Corp.

## MEMORANDUM OPINION

STAMP, District Judge.

### I. Background

Plaintiff Rosalie Lena Yeater, individually and as Executrix of the estate of Robert Yeater, filed this action in the Circuit Court of Marshall County on February 3, 1988, seeking compensatory and punitive damages from Defendants Allied Company and Olin Corporation. Plaintiff alleges that Robert Yeater died as a direct and proximate result of defendants' actions exposing him to certain chemicals at defendants' plant. Under West Virginia Code § 23–4–2(c)(2),

The immunity from suit provided under [the West Virginia Workers' Compensation Act to any employer contributing to the West Virginia workers' compensation fund] ... may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention." This requirement may be satisfied only if:

. . . . .

(ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct

and proximate result of such specific unsafe working condition.

W.Va.Code § 23–4–2(c)(2)(ii) (1985).

Defendants removed the action to this Court on February 29, 1988. Defendants deny that Robert Yeater's death was a direct or proximate result of any negligent, willful or wanton conduct by the Defendants and deny all liability therefor.

This Court's jurisdiction over these claims is grounded in 28 U.S.C. § 1332.

On April 6, 1990, after the February 20, 1990, deadline for completion of discovery had passed, Defendant Allied Corporation filed a Motion for Summary Judgment. On April 9, 1990, Defendant Olin Corporation filed a Motion for Summary Judgment with an accompanying Memorandum of Law. On May 4, 1990, Defendant Allied Corporation filed a Statement of Material Facts and Memorandum of Law in support of its Motion for Summary Judgment. Plaintiff Yeater filed a response brief to defendants' Motions on June 29, 1990. Olin Corporation filed its reply brief on July 23, 1990.

The Court heard oral argument on defendants' Motions on December 10, 1990, but deferred ruling until plaintiff could provide the Court with the specific statutory provisions upon which she relies to establish the factual basis for a finding that the conditions in defendants' plant were in "violation of a state or federal safety statute, rule or regulation, ... or of a commonly accepted and well-known safety standard ..."

## II. Uncontested Material Facts

Under Local Court Rule 2.07(d), "The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement [attached to the motion for summary judgment], as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." Plaintiff Yeater's statement of material facts attached to her responsive brief has not responded to a majority of the facts as set forth by Defendant Allied Corporation. Accordingly, all facts set forth in Defendant Allied Corporation's Statement of Material Facts to which Plaintiff Yeater has not responded are deemed admitted.

Plaintiff's decedent, her husband Robert Yeater, was employed at the Moundsville, West Virginia, chemical manufacturing facility owned by Allied and Olin from November 29, 1956, until October 26, 1984. Allied owned the plant from the time of its construction in the early 1950s until Olin purchased the facility in 1981. Mr. Yeater held several training positions at various locations in the plant during the first three years of his employment. There is no evidence to indicate that Mr. Yeater was exposed to benzene during this period. From 1959 through 1978, Mr. Yeater held several laboratory positions in the plant. His job responsibilities during that period would have included testing a number of the materials and products used and produced in the plant. Mr. Yeater may have been called upon to test benzene during this period, but no one can recall any specific instances when he was required to do so. From 1978 until his employment at the chemical plant ended in 1984, Mr. Yeater worked as an inorganic waste treatment operator in a building away from the process area. Mr. Yeater was responsible for monitoring the quality of the chemical plant's effluent into the Ohio River. Mr. Yeater died on February 4, 1986, as a result of respiratory complications secondary to cancer.

Robert Yeater's five treating physicians reach five different conclusions as to the nature of his condition and the cause of his death. Dr. Sushil Mehrotra concluded that Mr. Yeater suffered from liver cancer caused by alcohol consumption. Dr. Manuel A. Villaverde believed that the malignant tumor found in Mr. Yeater's liver was secondary to a primary cancer site in either the lungs or gastrointestinal tract. Dr. Villaverde expressed no opinion as to the cause of Mr. Yeater's death. Dr. Byron L. Van Pelt stated that Mr. Yeater suffered from pleural thickening and chronic changes of the lung. Dr. Van Pelt also expressed no opinion as to the cause of Mr.

Yeater's death. Dr. Michael W. Blatt found that Mr. Yeater suffered from lung cancer caused by cigarette smoking and chemical exposure. Dr. Roger L. Frome felt that Mr. Yeater suffered from liver cancer caused by alcohol consumption and exposure to benzene. Dr. Frome stated that it was more likely than not that benzene exposure was the predominant cause of Mr. Yeater's death. However, Dr. Frome indicated that he had no knowledge of the extent, duration, or concentration of benzene to which Mr. Yeater may have been exposed during his employment at the Moundsville chemical plant or which would be required to pose a significant health risk.

Plaintiff Rosalie Yeater knows of nothing other than Dr. Frome's conclusion that Mr. Yeater's death was caused predominantly by exposure to benzene upon which to base her claim under West Virginia Code § 23–4–2. Neither Mrs. Yeater nor her daughter have any personal knowledge that Robert Yeater was ever exposed to benzene in the workplace. Mr. Yeater never mentioned to either his wife or his daughter that he had been exposed to or used benzene at work. Neither Plaintiff nor her daughter has any personal knowledge of any specific incidents of exposure by Mr. Yeater to toxic chemicals, nor of any unsafe work practices at the chemical plant, nor of any complaints by Mr. Yeater of unsafe work practices or chemical exposures, except for Mrs. Yeater's statement that her husband should not have eaten lunch in the control room. Mrs. Yeater stated that she knows of no one at Allied or Olin who would intentionally injure her husband. Mr. Yeater was uniformly described as a safe and conscientious worker. Allied ceased production of the product employing benzene as a raw material in the early 1970s. After that time, some forms of benzene may have been used at the plant in small quantities for specific applications, but benzene in its raw form was no longer present at the plant.

During the period when Mr. Yeater worked in the Allied laboratory, none of Mr. Yeater's co-workers recall any incidents when Mr. Yeater was splashed with any chemicals or of any complaints by Mr. Yeater of any exposure to any chemicals. Mrs. Yeater stated in her deposition that on one occasion while her husband worked in the waste treatment facility something came out all over him, but she could not state what the material was. During the time when Mr. Yeater worked as an inorganic waste treatment operator, he ordinarily worked in a control room that was separated from the area in which the waste water was treated. None of Robert Yeater's co-workers could recall any instances of unsafe work practices while he worked in the control room. Mrs. Yeater states that her husband ate lunch in a room housing chemicals and concludes this was inappropriate. Allied responds that he was not required to eat lunch in the control room. None of Mr. Yeater's co-workers were aware of any unsafe work condition or threat of chemical exposure associated with eating lunch in the control room. There are no known instances of violations of federal or state safety or environmental regulations or standards, either reported or unreported, while Robert Yeater was employed at the Moundsville chemical plant.

Allied and Olin provided all of their employees with respirators, protective clothing, safety glasses, and shoes to be worn in the event of exposure to toxic materials. The chemical plant was equipped with an alarm system to warn of chemical leaks. Both Allied and Olin distributed Material Safety Data Sheets describing the nature of each chemical, its effects on health, tolerant exposure levels, and procedures to be followed in the event of exposure. The companies also held monthly safety meetings for all employees. No other employee at the Moundsville chemical plant has ever sustained a serious injury or death as a result of exposure to benzene.

Following Robert Yeater's death, Mrs. Yeater filed an application for benefits with the West Virginia Workers' Compensation Fund outside of the two year time period prescribed by law. The Commissioner denied her application, ruling that Mr. Yeater's death was not caused by working conditions and that her application was not timely filed.

### III. Rule 56 Standards

Under Fed.R.Civ.P. Rule 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." As the United States Supreme Court noted in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), "Rule 56(c) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256, 106 S.Ct. at 2514. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. *Oksanen v. Page Memorial Hospital,* 912 F.2d 73, 78 (4th Cir.1990). In reviewing the supported underlying facts, however, all inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Each Defendant has attached deposition testimony and documentary evidence to its brief supporting the facts alleged therein. Plaintiff Yeater has supplemented the factual assertions in her brief with supporting documents. No discovery requests are outstanding.

### IV. Whether There Is Any Issue of Material Fact That Would Preclude a Grant of Summary Judgment in Favor of Allied Corporation and Olin Corporation

■ The primary question that this Court must address is whether any disputed issues as to material fact exist that must be decided by the finder of fact before the relevant law can be applied. After a review of all materials now before it, the Court concludes that no materially factual issues in dispute exist so as to survive Defendants' Motions for Summary Judgment. The only questions remaining in the case are wholly questions of law, which this Court can and must resolve at this stage of the case. The Court concludes that Defendants Allied and Olin are each entitled to summary judgment.

■ It is important to note that under West Virginia Code § 23–4–2, a defendant loses its immunity from suit only if the Plaintiff establishes that the defendant has acted with "deliberate intention." Deliberate intention can be established by showing that five elements exist. A failure to prove even one of these elements makes it impossible to establish that a corporation acted with deliberate intention. Unless the plaintiff establishes the existence of each and every factor, the defendant-employer will not lose its statutory immunity and is not subject to liability. Plaintiff in this case has failed to satisfy the statutory requirements.

#### A. Deliberate Intention Under the Amended West Virginia Statute

The section of West Virginia's Workers' Compensation laws governing suits brought by employees against employers was first construed by the West Virginia Supreme Court of Appeals in *Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978). *Mandolidis* held that an employer is subject to common law tort actions when the employer commits an intentional tort or engages in willful, wanton and reckless misconduct. *Id.* at 914. In 1983, after the business and legal commu-

**1336**

nities expressed much interest in seeking a legislative alteration of *Mandolidis*, the legislature amended the statute, replacing it with the current statute.

In the first decision carefully analyzing West Virginia Code § 23–4–2 after its amendment in 1983, *Handley v. Union Carbide Corp.*, 620 F.Supp. 428 (S.D.W.Va. 1985), *aff'd*, 804 F.2d 265 (4th Cir.1986), Chief Judge Haden, in granting judgment *n.o.v.* to the defendant, determined that the legislature intended to create a standard whereby an employer would lose its immunity from tort actions only under narrow circumstances, rather than under the common law tort system of willful, wanton, and reckless misconduct. *Id.* at 434 (quoting W.Va.Code § 23–4–2(c)). As the court stated, "To fulfill this legislative desire, the new statute contains five tightly drawn elements which must be proven before an employer will lose its immunity." *Id. Handley* also noted that "because a [plaintiff has] to prove five independent and narrowly drawn elements, directed verdicts and judgments *n.o.v.* may be appropriate more frequently."[1] *Id.* at 432. Further, "for each specific unsafe working condition adduced, [the plaintiff must] prove each of the five elements set forth under the ... statute." *Id.* at 436. *See also Wise v. Ruffin*, 914 F.2d 570, 574 (4th Cir.1990) (noting that if the statutory language is clear, the Court's task is to apply the statute as written).

The Fourth Circuit, in a ruling affirming the district court's decision in *Handley*, held that "[i]n [West Virginia Code § 23–4–2(c)(2) ] no wording is more deliberate than that which requires proof of a specific unsafe working condition.... The evidence in each instance must relate to a specific condition in a particular workplace. Obviously, such a condition must be sufficiently identifiable and sufficiently subject to narrow categorization that 'specific' government rules or industry safety rules

can be formulated and applied to it." *Handley v. Union Carbide Corp.*, 804 F.2d 265, 272 (4th Cir.1986). *See also Belcher v. J.H. Fletcher & Co.*, 498 F.Supp. 629, 630 (D.C.W.Va.1980) (noting that the only exception to blanket immunity under West Virginia Workers' Compensation law is when employer acted with deliberate intention).

The West Virginia Supreme Court of Appeals, in its recent opinion examining § 23–4–2 of the Workers' Compensation Act for the first time since the 1983 amendments, favorably cited the *Handley* decisions and adopted much of the reasoning of the two opinions. *Mayles v. Shoney's, Inc.*, No. 19530, slip op. at 8, 11 (W.Va. Dec. 20, 1990).

This amended statute, and the judicial gloss that these opinions have put upon it, control the resolution of the case now before the Court. The Court will adopt the straightforward review process used by the West Virginia Supreme Court in *Mayles* to explain its decision.

## B. Specific Unsafe Working Conditions

█ Under West Virginia Code § 23–4–2(c)(2)(ii)(A), a specific unsafe working condition that presents a high degree of risk and a strong probability of serious injury or death must exist before an employer will lose its immunity from suit provided under the Workers' Compensation Act. Plaintiff has not proven that such a working condition existed and therefore has failed to successfully resist defendants' Motions for Summary Judgment.

OSHA states that "[b]enzene *may* cause adverse health effect following exposure via inhalation, ingestion, or dermal or eye contact." *Occupational Safety and Health Guideline for Benzene: Potential Human Carcinogen*, at 2, U.S. Dept. HHS (1988) (emphasis added). The Court notes the date on this Guideline: four years after

---

1. The Court also notes that the amended statute specifically provides that "the court shall dismiss the action upon motion for summary judgment if it shall find, pursuant to Rule 56 of the Rules of Civil Procedure that one or more of the facts required to be proved [under West Virginia Code § 23–4–2] ... do not exist...."

Hence, in a somewhat unusual prescription, the West Virginia Legislature has expressly directed those courts faced with enforcing this statute to use procedural pre-trial disposition where the employee cannot meet the requirements of proving deliberate intention under the Act.

the closure of the Moundsville plant and two years after Robert Yeater's death. To establish that a specific unsafe working condition existed at the Moundsville chemical plant, plaintiff, in her statement of facts, lists "the presence of carcinogens, namely benzene and benzene derivatives, and a contaminated well or wells." In her responsive brief to defendants' Motions for Summary Judgment, plaintiff states that benzene was haphazardly stored in the plant; that the water in the Ranney Well was contaminated; and that the soil beneath the plant was contaminated. In her deposition testimony, however, plaintiff stated that the only unsafe working condition to which she referred was her husband's practice of eating lunch in the control room at the waste treatment facility during his last years of employment by Allied and Olin, and there appears to be no other evidence of plaintiff's claim that benzene was haphazardly stored.

The particular unsafe conditions to which plaintiff points in her responsive brief do not in any way support her case against Olin Corporation. The deposition testimony offered by plaintiff supports only the conclusion that the Ranney Well was not in use after the early 1970s. Since Olin did not acquire the plant until 1981, this particular working condition did not exist when Olin owned the plant. Further, the particular exposure to benzene to which Richard L. Hinerman referred in his deposition occurred in the 1950s, long before Olin purchased the plant in 1981. Plaintiff has failed to show the existence of any specific unsafe working condition during the time the plant was controlled by Olin Corporation.

No facts have been produced to support plaintiff's allegation that the soil beneath the plant was contaminated. Plaintiff's witness only stated that he assumed the soil was contaminated without providing any evidence to support his assertion. Mere allegations are not sufficient to survive a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. at 2514.

Plaintiff has also failed to produce any facts that would establish that eating in the waste treatment control room constituted an unsafe working condition that posed a high degree of risk of severe injury or death. Mrs. Yeater stated that she did not believe that a person should eat in a room in which chemicals were present. Plaintiff never visited the control room, however, and has produced no evidence to show that any chemicals were present therein.[2] Plaintiff's allegations do not satisfy the statutory requirements.

It is at least arguable that Plaintiff has provided sufficient facts in support of two specific unsafe working conditions existing while Plaintiff's decedent was employed by Allied. First, there is evidence that at least one employee was splashed by benzene numerous times and that benzene spilled over the top of a tank on one occasion. Second, there is evidence to establish that the contaminated well was in use during Mr. Yeater's employment with Allied. This evidence alone, however, is not sufficient to satisfy the first prong to the five part test under the West Virginia statutes.

Subsection (A) of West Virginia Code § 23–4–2(c)(2)(ii) also requires that the working condition being challenged must pose "a high degree of risk and a strong probability of serious injury or death." As this Court has already noted, the Supreme Court decided in *Liberty Lobby* that "Rule 56(c) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." 477 U.S. at 256, 106 S.Ct. at 2514. Plaintiff must prove that each unsafe working condition presented a high degree of risk and a strong probability of serious injury or death. *Handley*, 620 F.Supp. at 436. Plaintiff has not met this burden.

Plaintiff has not shown that drinking the Ranney Well water or being splashed with benzene "presented a high degree of risk

---

**2.** There has been deposition testimony that some of the waste water passing through the waste treatment facility may have contained benzene derivatives, but plaintiff has not demonstrated any contact Mr. Yeater would have had with this waste water.

and a strong probability of serious injury or death." The mere fact that OSHA classified benzene as a potential human carcinogen in 1988 does not in itself establish a strong probability of serious injury or death. Each day laboratory workers throughout the nation handle chemicals classified as potential carcinogens, but this does not mean that they work in unsafe conditions, exposing themselves to a strong probability of serious injury or death. The intensity of the exposure is a critical factor. Plaintiff has made no showing of the concentrations of the chemicals present in any part of the defendants' plant. Plaintiff's submissions to the Court state that "[t]he current Occupational Safety and Health Administration permissible exposure limit for benzene is 1 part of benzene per million parts of air (ppm) as a time-weighted average concentration over an 8–hour workshift; the short-term exposure limit is 5 ppm in any 15–minute sampling period." *OSHA Guidelines for Benzene*, at 1. The Court can find no evidence in plaintiff's submissions that the concentration levels in the Moundsville chemical plant ever exceeded these levels.

Plaintiff alleges that her husband drank contaminated water, but nowhere does she suggest the degree of contamination. It is true that OSHA has stated that ingestion of benzene may cause adverse health effects, but it is also true that in none of plaintiff's submissions has she established or even alleged the concentration of benzene in the Ranney Well water. Nor has she demonstrated what concentrations of ingestion are hazardous. To meet the stringent requirements under West Virginia Code § 23–4–2(c)(2)(ii)(A), plaintiff must establish a strong probability of serious injury or death. She has not done so.

Further, plaintiff has not disputed Defendant Olin's contention that no other employee at the Moundsville chemical plant has ever sustained a serious injury or death as a result of exposure to benzene. While such evidence is, of course, not dispositive, it does offer even more support for this Court's conclusion that Plaintiff has failed to establish, as against both Allied and Olin, that "a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death." Defendants' Motions for Summary Judgment must be granted on these points.

### C. Subjective Realization

■ Even assuming plaintiff satisfied the first condition under West Virginia Code § 23–4–2(c)(2)(ii), a conclusion that this Court does not reach, under West Virginia Code § 23–4–2(c)(2)(ii)(B), the plaintiff must also establish that the employer had a subjective realization and an appreciation of the existence of a specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition before an employer will lose its immunity from suit provided under the Workers' Compensation Act. *See Nedley v. Consolidation Coal Company*, 578 F.Supp. 1528, 1530 (N.D.W.Va.1984) (company loses its immunity only if employer is aware of the high degree of risk of physical harm). Plaintiff has not proven that Allied or Olin had a subjective realization that such a working condition existed and therefore, for this additional reason, defendants' Motions for Summary Judgment must be granted.

West Virginia Code § 23–4–2 "does not abrogate immunity for employers who engage in objectively hazardous enterprises such as ... chemical production." *Handley*, 620 F.Supp. at 436. The plaintiff must demonstrate that for each of the alleged specific unsafe working conditions, the employer had a subjective realization and an appreciation of the existence of the unsafe working condition and the potential for harm therefrom.

The regulations supplied by plaintiff that designate benzene as a hazardous material for purposes of the Federal Water Pollution Control Act were not published in the Federal Register until March 13, 1978. The Court can see no applicability of the material to this case. Even if the regulations were deemed to apply, plaintiff has provided no information that benzene was known to be a hazardous material before

March 13, 1978. The date designating benzene as hazardous is after the early 1970s closure date of Ranney Well. It is also after the 1975 closure of the benzene nitration unit at the Moundsville plant, after which, apparently, the only benzene at the plant was commercially produced benzene used in the laboratories. Thus, there is nothing in any of Plaintiff's submissions to the Court that would support a finding that Allied had a subjective realization of the dangers of ingesting or being sprayed with benzene during the time period when these incidents were alleged to have occurred.

No factual material has been supplied to the Court in support of a finding that the soil beneath the chemical plant was contaminated. Again, plaintiff has supplied this Court with copies of several federal regulations and an OSHA Bulletin on benzene, but nowhere can she point to any material establishing that Allied or Olin had a subjective realization that the contamination existed, or any material establishing what concentration of benzene in the soil constitutes contamination that poses a high risk and a strong probability of death or serious injury.

Plaintiff has provided the Court with no factual material in support of a finding that either Allied or Olin knew that eating lunch in the waste control room at the plant constituted a specific unsafe working condition with a high degree of risk and strong probability of serious injury or death. None of Robert Yeater's co-workers were aware of any safety hazards from eating in the control room and, as the Court has already noted, plaintiff has not demonstrated that any chemicals were present in the control room or, assuming chemicals were present, what concentrations of exposure existed. Plaintiff's opinion that her husband should not have eaten lunch in the control room is not, without more, sufficient to withstand defendants' Motions for Summary Judgment. Plaintiff has failed to satisfy the second prong of the test under the West Virginia Workers' Compensation Act. Defendants' Motions for Summary Judgment must be granted as to this part of the statute.

### D. Violation of a Safety Statute or Standard

■ The Court has concluded that plaintiff has failed to satisfy the first two requirements for stripping an employer of immunity under the West Virginia Workers' Compensation Act. Even if plaintiff had satisfied the first two prongs under § 23–4–2, under West Virginia Code § 23–4–2(c)(2)(ii)(C) Plaintiff must also establish that the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, or of a commonly accepted and well-known safety standard within the industry or business of such employer. Further, the statute, rule or regulation, or safety standard must be shown to be specifically applicable to the particular work and working conditions involved before an employer will lose its immunity from suit provide under the Workers' Compensation Act. *See Greene v. Carolina Freight Carriers*, 663 F.Supp. 112, 115 (S.D.W.Va.1987) ("the statute or standard must *specifically* address the unsafe working condition in question"). Plaintiff has not proven facts sufficient to satisfy this requirement. Defendants' Motions for Summary Judgment must be granted as to this part of the statute.

Plaintiff insists, correctly, that under West Virginia Statute § 23–4–2(c)(2)(ii)(C), she need not cite a specific statute, rule, or regulation that the employer is alleged to have violated to establish the third prong of the test. Federal procedural law controls in federal courts, however, and under the Supreme Court's decisions, mere allegation in a pleading will not allow the plaintiff to survive defendants' Motions for Summary Judgment. *Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. at 2514. Plaintiff must demonstrate facts that a particular statute, rule, regulation, or safety standard has been violated. Plaintiff must establish that the statute, rule, regulation, or safety standard was *specifically applicable* to the particular work and working condition involved. The regulatory materials that plaintiff has submitted in opposition to defendants' Motions do not satisfy this statutory requirement.

The first specific unsafe working condition alleged by plaintiff is that Allied and Olin stored benzene haphazardly in the Moundsville chemical plant. As this Court has already noted, and as plaintiff has not disputed, the benzene nitration unit was closed in 1975, six years before Olin acquired the plant. Thus, plaintiff's allegation operates only against Allied Corporation. The OSHA regulatory materials that plaintiff has supplied are dated 1988. This is after the plant closed and thirteen years after the Moundsville chemical plant's benzene use was limited to small commercial quantities. When West Virginia Code § 23–4–2(c)(2)(ii)(C) speaks of a "commonly accepted and well-known safety standard within the industry or business of such employer," the Court is certain that materials dated three years after the chemical plant's closure do not meet this standard and will not allow plaintiff to defeat defendants' summary judgment motions on that issue. Even if the OSHA material had been promulgated before 1975, plaintiff has still failed to establish that Allied did not meet the standards therein. As the Court has already noted, nowhere is any factual material to suggest that Allied exceeded the 1 ppm benzene exposure limit. Further, the one deponent who stated that he was splashed with benzene has provided no information to suggest that following such exposure, the recommended safety procedures were not followed.

Plaintiff also supplied the Court with the regulations establishing the national emissions standards for equipment leaks of benzene. *See* 40 C.F.R. §§ 61.110, 61.240. Again, the promulgation date for the regulations is 1984, nine years after benzene was last used as a raw material and only four months before the plant was closed. Plaintiff has failed to show how the standards supplied are specifically applicable to the workplace in Olin's Moundsville plant. Plaintiff has also failed to allege sufficient facts to establish that during the four months when the standards were in effect Olin failed to satisfy the standards. The only evidence relating to Robert Yeater's work in the waste treatment facility is that none of Mr. Yeater's co-workers were aware of any unsafe conditions therein.

Because the alleged unsafe working conditions are tenuous at best, plaintiff has the difficult task of finding specific statutes, rules, regulations, or standards with which Allied and Olin had not complied. She has not succeeded.

The second unsafe working condition that plaintiff has alleged is that the Ranney Well was contaminated. Plaintiff states in her response brief that "Clearly, having men drink contaminated water ... is a violation [of] state or federal safety regulations." Plaintiff's Response Brief at 9. The only regulatory material specifically addressing benzene-contaminated water is 40 C.F.R. § 116.4. This material has no relevance to this case, however, as 40 C.F.R. § 116.4 classifies benzene as a hazardous substance only with respect to the Federal Water Pollution Control Act. The only other even marginally relevant materials, the OSHA guidelines supplied by plaintiff, were not in effect during the time period when the alleged violations occurred. The OSHA materials make no reference whatever to ingestion of benzene contaminated water. Further, nowhere has plaintiff established the concentration of benzene in the Ranney Well. Plaintiff's allegations have not been supported by the facts necessary to successfully resist defendants' Motions for Summary Judgment as to that portion of the statute.

Because no factual material has been supplied to the Court in support of a finding that the soil beneath the chemical plant was contaminated, it is not possible for plaintiff to prove that the soil condition was a violation of a specific rule, regulation, statute, or practice. The only material plaintiff has supplied to the Court that even mentions benzene in soil states that "large quantities of liquids containing benzene may be absorbed in ... earth." *OSHA Guidelines*, at 4. This is simply not enough to survive defendants' Motions for Summary Judgment. Plaintiff must come forward with specific facts that would establish a genuine issue of material fact. She has not done so.

The fourth alleged unsafe condition is Robert Yeater's practice of eating lunch in

the waste treatment control room. As noted above, plaintiff has not established that benzene was present in the control room. Further, even assuming chemicals were present, plaintiff has not established the level of exposure to benzene to which Mr. Yeater was subjected. Therefore, nothing in the materials provided to the Court would suggest that Mr. Yeater's practice of eating lunch in the control room was a violation of any statute, rule, regulation, or safety standard.

In the case of each of the alleged unsafe working conditions plaintiff has failed to establish a violation of any state or federal safety statute, rule or regulation, or industry standard. Therefore, defendants' Motions for Summary Judgment must be granted as to that part of the statute.

### E. Intentional Exposure

■ The Court has concluded that plaintiff has failed to satisfy any of the first three requirements for stripping an employer of immunity under the West Virginia Workers' Compensation Act. The Court finds that plaintiff has also failed to establish the fourth requirement. Under West Virginia Code § 23–4–2(c)(2)(ii)(D), plaintiff must establish that Allied and Olin intentionally exposed Robert Yeater to a specific unsafe working condition before an employer will lose its immunity from suit provided under the Workers' Compensation Act. Defendants' Motions for Summary Judgment must be granted since plaintiff has not proven facts sufficient to satisfy this requirement.

Plaintiff contends that benzene was haphazardly stored in the Moundsville chemical plant, but has failed to present any facts to support a conclusion that Allied and Olin intentionally exposed plaintiff's decedent to the benzene. The undisputed material facts establish that the Moundsville chemical plant was equipped with an alarm system that was to operate whenever chemical leaks occurred. Additionally, all employees were provided with protective clothing, respirators, safety glasses and shoes to be worn in the event of exposure to toxic chemicals. Robert Yeater was uniformly recognized by his co-workers as a conscientious worker who regularly attended the monthly safety seminars. No deponent has been able to establish a single instance when Mr. Yeater was exposed to benzene or when he complained that he had been so exposed. Finally, Mrs. Yeater can think of no one who would want to intentionally harm her husband. After a review of the undisputed facts, the Court concludes that plaintiff's allegation that Allied and Olin intentionally exposed Mr. Yeater to haphazardly stored benzene has not been supported by facts sufficient to satisfy the fourth requirement under the Workers' Compensation Act.

The Ranney Well apparently had seven "fingers," only one of which was contaminated. The deposition testimony that plaintiff has produced in opposition to defendants' Motions for Summary Judgment indicates that Allied sealed off the contaminated water supply following an investigation in the 1960s. Indeed, all the evidence indicates that by the early 1970s, city water was used for all drinking and washing purposes. This information certainly does not support a conclusion that Allied intentionally exposed Mr. Yeater to a contaminated well. Instead, it indicates that Allied acted to protect the safety of its workers. Further, there is no evidence that would indicate that the well was ever used for drinking water or other purposes while Olin managed the plant. Plaintiff's failure to produce sufficient facts in support of her contention requires this Court to find that there is no issue of material fact as to whether defendants intentionally exposed Mr. Yeater to contaminated well water.

Because there has been no evidence whatsoever that the soil beneath the chemical plant was contaminated, or, even if it were, that Allied or Olin was aware of such contamination, it is impossible for plaintiff to demonstrate that her husband's employer intentionally exposed Mr. Yeater to contaminated soil. Plaintiff has alleged that Allied and Olin were aware of the soil contamination and still intentionally exposed Mr. Yeater to the soil, but her failure to provide a single fact in support of the allegation requires this Court to find plaintiff has not met her burden under West Virginia Code § 23–4–2(c)(2)(ii)(D).

Plaintiff has also failed to allege facts sufficient to prove that by permitting her husband to eat in the waste removal control room, Allied and Olin intentionally exposed Mr. Yeater to an unsafe working condition. It is important to note at this point that Mr. Yeater was not required to eat in the control room. Mr. Yeater could have eaten in a lunchroom at a different location if he so desired. Further, since plaintiff has produced no evidence that benzene was present in the control room, there is simply no evidence that eating lunch there was hazardous. Plaintiff's failure to establish that Allied or Olin intentionally exposed Mr. Yeater to a specific unsafe working condition by permitting him to eat his lunch in the waste removal control room requires the Court to find that plaintiff has not met her burden under West Virginia Code § 23–4–2(c)(2)(ii)(D).

In the case of each of the alleged unsafe working conditions plaintiff has failed to establish that Allied or Olin intentionally exposed Robert Yeater to a specific unsafe working condition. Defendants' Motions for Summary Judgment must be granted as to that statutory requirement.

### F. Death Direct and Proximate Result

■ The Court has concluded that plaintiff has failed to satisfy each of the first four requirements for stripping an employer of immunity under the West Virginia Workers' Compensation Act. The Court also finds that plaintiff has failed to establish the final requirement. Under West Virginia Code § 23–4–2(c)(2)(ii)(E) plaintiff must establish that Mr. Yeater's death was a direct and proximate result of a specific unsafe working condition. Defendants' Motions for Summary Judgment must be granted since plaintiff has not proven facts sufficient to satisfy this requirement.

Plaintiff has not suggested how each specific unsafe working condition alleged led to Mr. Yeater's death. Rather, plaintiff seems to urge that all of the working conditions together led to Mr. Yeater's death. This blanket allegation does not appear to satisfy the requirements of West Virginia Code § 23–4–2. The Court will, however, address the allegation with respect to each allegedly unsafe working condition.

■ A brief review of the facts indicates that of Mr. Yeater's five physicians, only Dr. Frome stated it was more likely than not that plaintiff's decedent died as a result of exposure to benzene. However, Dr. Frome did not connect Mr. Yeater's death to any of the four particular unsafe working conditions alleged in plaintiff's complaint. Instead, he stated that it was his conclusion that Mr. Yeater died as a result of prolonged exposure to benzene. This general conclusion does not satisfy the requirement of the West Virginia Workers' Compensation Act. The Court is also not convinced that Dr. Frome's finding is sufficient to establish proximate cause under this statute. Neither Dr. Frome's testimony nor any other deposition testimony produced by plaintiff in opposition to defendants' Motions for Summary Judgment has made a sufficient showing to establish that Mr. Yeater's death was a direct and proximate result of any specific unsafe working condition. Additionally, no evidence has been introduced that any other person has ever died or been seriously injured as a result of exposure to benzene at the Moundsville chemical plant. Finally, the West Virginia Workers' Compensation Fund denied plaintiff's application for dependents' benefits in part because it concluded that Mr. Yeater's death was not caused by working conditions.

Even if the Court were to find that Dr. Frome's testimony had established that Robert Yeater's death was the direct and proximate result of benzene exposure at the Olin or Allied plant, plaintiff's failure to satisfy any of the four other statutory requirements, specifically the requirement that the death be the result of a specific unsafe working condition, requires entry of summary judgment against plaintiff.

Because of plaintiff's failure to introduce any facts that could lead the Court to find that Robert Yeater had ever been splashed

with benzene or directly exposed to it in any way, plaintiff has not established that Mr. Yeater's death was the direct and proximate result of Allied or Olin's benzene storage policies. Dr. Frome's conclusion that Mr. Yeater's death was caused by his general exposure to benzene does not allow the Court to specifically conclude that haphazard storage of benzene by defendants, or either of them, was the cause of his death. Plaintiff simply has failed to meet the statutory requirement that she show that the allegedly haphazard storage of benzene was the direct and proximate cause of Mr. Yeater's death.

Mr. Yeater's last exposure to the allegedly contaminated finger of the Ranney Well would have occurred during the 1960s, more than fifteen years before his death. While remoteness in time alone does not require the Court to find that exposure to the allegedly contaminated Ranney Well could not be the direct and proximate cause of Mr. Yeater's death, it is certainly a factor against so finding. Additionally, there is nothing else in the record that would permit the Court to find that Plaintiff has proven that Mr. Yeater's death was a direct and proximate result of the existence of contamination of the Well. No one has provided testimony that Mr. Yeater drank from the Well or that he was ever splashed by water from the Well. Plaintiff has not established facts sufficient to resist defendants' Motions for Summary Judgment on that issue.

As the Court has already noted, there has been no evidence whatsoever that the soil beneath the chemical plant was contaminated, or, even if it was, that Allied or Olin was aware of such contamination. Plaintiff's allegation alone will not allow her to withstand defendants' Motions for Summary Judgment. Because no facts have been produced in support of a finding that exposure to the soil beneath the chemical plant was the direct or proximate cause of Mr. Yeater's death, this Court finds that plaintiff has not met her burden under West Virginia Code § 23–4–2(c)(2)(ii)(E).

Plaintiff's allegation that Mr. Yeater should not have eaten in the waste treatment control room is not supported by any evidence that would permit a finder of fact to conclude that such a working condition was the direct and proximate cause of Mr. Yeater's death. There has been no evidence that any benzene was present in the control room. Nor has there been any showing of how eating in the control room put Mr. Yeater in any danger of a serious injury or death. Plaintiff has failed to present evidence sufficient to show that Mr. Yeater died because he ate lunch in the control room. Plaintiff has failed to meet the standards that the Supreme Court has determined must be met to avoid the entry of summary judgment against her on that issue.

V. Whether this Action Is Barred Under the Doctrines of Res Judicata or Collateral Estoppel

■ Defendants argue that this action is barred under the doctrines of res judicata or collateral estoppel, or both, because the Workers' Compensation Fund based its denial of plaintiff's claim for Dependents' Benefits on a finding that Mr. Yeater's death did not result from a workplace injury. This Court holds that the suit is not barred for that reason.

The West Virginia Supreme Court of Appeals has held that:

An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive ... It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits.

*In re McIntosh's Estate*, 144 W.Va. 583, 109 S.E.2d 153, 158 (1959) (quoting *Sayre's Adm'r v. Harpold*, 33 W.Va. 553, 11 S.E. 16 (1890) (emphasis in original)). *McIntosh's Estate* holds that a matter is barred only if the first adjudication could validly decide the case on the merits. The Court is not convinced that the West Virginia Work-

**1344**

ers' Compensation Fund could validly dispose of Mrs. Yeater's suit upon the merits.

■ The Workers' Compensation Fund gave two reasons for its denial of Mrs. Yeater's claim: 1) Mr. Yeater's death was not caused in the workplace and 2) Mrs. Yeater's request was not timely filed. The Court is convinced that the Fund's conclusion that her petition was not timely filed meant that it had no jurisdiction to decide the case on its merits. Thus, the status of the case was not such that it could be decided upon the merits. Further, even assuming the Fund did reach the merits of the claim, the Court is unable to determine the particular reason on which the Fund based its denial of benefits. It is unclear whether the finding that Robert Yeater's death was not work-related was the controlling reason for denying benefits. Accordingly, plaintiff's suit in this Court is not barred by res judicata or collateral estoppel.

### VI. Conclusion

The Court finds as a matter of law that defendants have not lost their statutory immunity under the West Virginia Workers' Compensation Act. Plaintiff has failed to satisfy each of the five requirements under West Virginia Code § 23–4–2(c)(2)(ii) and has not shown that Allied or Olin acted with deliberate intention to seriously injure Mr. Yeater.

It is hereby ORDERED that Defendant Allied Chemical Company and Defendant Olin Corporations' Motions for Summary Judgment are GRANTED.