**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LUCY BENNETT; RONALD BENNETT,
Plaintiffs-Appellants,

v.

THE KROGER COMPANY, a foreign
corporation,                                          No. 97-1938
Defendant-Appellee,

and

MARK JONES,
Defendant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
David A. Faber, District Judge.
(CA-96-96-5)

Submitted: April 21, 1998

Decided: June 15, 1998

Before WIDENER and WILLIAMS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Harold F. Salsbery, Madonna C. Estep, SALSBERY & DRUCK-
MAN, Charleston, West Virginia, for Appellants. Joseph M. Price,

Michael A. Kawash, ROBINSON & MCELWEE, L.L.P., Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Lucy and Ronald Bennett appeal the district court's grant of summary judgment for The Kroger Company (Kroger) in this diversity action, 28 U.S.C. § 1332 (1994). The Bennetts filed suit against Kroger, alleging that Kroger was liable under W. Va. Code § 23-4-2(c)(2) (1994), for injuries Lucy Bennett suffered in a fall while was working in the deli section at the Kroger store in Beaver, West Virginia. The district court granted summary judgment to Kroger, and we affirm.

The injury in question took place in 1994, when Lucy Bennett slipped on a wet part of the floor and broke her hip. She required a total hip replacement and incurred $40,000 in medical expenses. Bennett was unable to work for nearly twenty-six months; one leg is now one-half inch shorter than the other, necessitating that she wear a special shoe.

According to Bennett's deposition, the water on the floor came from a machine called the bread proofer in the deli. She had noticed that water built up on the floor at that spot for as long as she had worked at the deli, which was most of her fifteen years employment. She also stated that other employees had fallen in the area. Bennett admitted that she was aware of the Kroger store safety rules requiring that any liquids on the floor be cleaned up immediately, and had signed an acknowledgment to that effect. Bennett received worker's compensation for her injury.

2

Under West Virginia law, employers are generally immune from liability in actions under common law or statute for employee injuries covered by the state worker's compensation act. W. Va. Code § 23-2-6 (Supp. 1997). In Mandolidis v. Elkins Indus., Inc., 246 S.E.2d 907 (W. Va. 1978), the state high court held that the general immunity from damage suits arising from work-related injuries is abrogated if the employer has acted with deliberate intention to injure an employee. Such a proceeding is now known as a Mandolidis action, and the court's holding has been codified in W. Va. Code § 23-4-2(c)(2). See Arthur v. E.I. DuPont de Nemours & Co., 58 F.3d 121, 123 (4th Cir. 1995).

The statute provides two distinct methods of establishing the employer's deliberate intention. Under § 23-4-2(c)(2)(i), the employee must prove that the employer acted with a conscious intention to produce specific injury to the employer. Under § 23-4-2(c)(2)(ii), a plaintiff must prove five elements: (A) a specific unsafe working condition existed in the workplace, creating a high degree of risk and strong probability of serious injury; (B) the employer realized and understood the existence of the unsafe condition as well as the high risk of injury; (C) the unsafe working condition was a violation of a state or federal safety statute, rule or regulation or a commonly accepted and well-known safety standard within the business, which was specifically applicable to the particular work and working condition involved, "as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions"; (D) the employer intentionally exposed the employee to the unsafe condition; and (E) the employee suffered serious injury or death as a result.

In this case, the Bennetts conceded below that they could not support their claim under § 23-4-2(c)(2)(i). In granting summary judgment as to § 23-4-2(c)(2)(ii), the district court concluded that the Bennetts could not establish subsection (C) of the claim. The only issue before us on appeal is whether summary judgment on this ground was appropriate.

We review a grant of summary judgment de novo. United States v. Kanasco, Ltd., 123 F.3d 209, 210 (4th Cir. 1997). The moving party must demonstrate that there exists no genuine issue of material

3

fact for trial. See Celotex v. Catrett, 477 U.S. 317, 322-23 (1986). We consider the facts in the light most favorable to the non-movant. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

The Bennetts's expert, Harold Parker, cited two federal regulations to support his contention that the water on the floor of the Kroger deli was a violation of a specific federal or state safety provision. In addition, the Bennetts assert that Parker's affidavit and deposition create an issue of fact as to whether the water on the floor violated a well-known, commonly accepted safety practice within the grocery business.

The regulations cited by Parker are just the sort of general provisions that are specifically excluded from subsection (C). Section 1910.22, 29 C.F.R. (1997), provides general requirements for walking-working surfaces, and applies to all permanent places of employment. It provides in pertinent part, "[t]he floor of every workroom shall be maintained in a clean and, so far as possible, a dry condition. Where wet processes are used, drainage shall be maintained, and false floors, platforms, mats or other dry standing places should be provided where practicable." Section 1910.141(a)(3)(ii), 29 C.F.R. (1997), dealing with sanitation, is another general provision for all permanent places of employment. "The floor of every workroom shall be maintained, so far as practicable, in a dry condition. Where wet processes are used, drainage shall be maintained and false floors, platforms, mats, or other dry standing places shall be provided, where practicable, or appropriate waterproof footgear shall be provided." The Bennetts argue that slip and fall hazards occur in every industry, and it would be impracticable to detail specifically each industry or business in the Code of Federal Regulations. But the West Virginia statute specifically provides that a general safety provision is insufficient to satisfy subsection (C). See Greene v. Carolina Freight Carriers, 663 F. Supp. 112, 115 (S.D.W. Va. 1987) (holding that a general regulation requiring safe equipment is not specific enough under subsection (C)).

The Bennetts also suggests that the affidavit and deposition of their expert, Parker, provide evidence that wet spots on the floor violate a commonly accepted safety standard within the grocery business. Under Mayles v. Shoney's, Inc., 405 S.E.2d 15 (W. Va. 1990), testi-

4

mony by an expert as to what violates the industry standard can satisfy subsection (C). In <u>Mayles</u>, a restaurant worker was burned with hot grease he was attempting to carry in an open container down a slippery, grassy slope to the disposal bins. The relevant safety regulations were general and did not pertain specifically to the restaurant business. But the court held that the testimony of an expert in the restaurant business as to the commonly accepted, well-known safety standard within the business for disposing of hot grease was adequate to satisfy subsection (C). <u>Id.</u> at 22.

As the district court held below, however, the Bennetts's expert did not set forth specific, well-known standards within the grocery business or personal experiences from the business as to how the problem of water on the floor is handled, as did the expert in <u>Mayles</u> in relation to grease disposal. Parker's testimony dealt with wet floors as a general problem in business and industry.

The statute in question expressly requires that the unsafe working condition in question violate a "safety statute, rule, or regulation, . . . or . . . a commonly accepted and well-known safety standard within the . . . business . . . <u>specifically</u> applicable to the <u>particular</u> work and working condition involved, as contrasted with [one] generally requiring safe workplaces, equipment, or working conditions. . . ." W. Va. Code § 23-4-2(c)(2)(ii)(C) (emphasis added). As the district court held, a specific safety provision or standard is not present in this case. Section 23-4-2(c)(2) is not intended to give every injured employee a remedy; the worker's compensation system satisfies that purpose. Rather, the statute works to deny immunity to employers whose conduct is so outrageous that it falls outside the accepted standards of conduct, imposed either externally or from within the business. <u>Greene</u>, 663 F. Supp. at 115. The statute allows no flexibility. <u>Id.</u> The facts in this case do not come within this strict standard. Therefore, the Bennetts have no proof to establish subsection (C), and summary judgment was appropriate.

We affirm the judgment below. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

5